*In re* ÁNGEL L. DELGADO, querellado.

*Número:* O-83-323      *Resuelto:* 25 de febrero de 1988

*Eliadís Orsini Zayas, Procuradora General Auxiliar,* abogada de El Pueblo; *Edwin R. Bonilla Vélez, Comisionado Especial; José R. Lebrón Velázquez,* abogado del querellado.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

Teniendo como base una investigación que realizara su Comisión de Ética, el Ilustre Colegio de Abogados de Puerto Rico radicó un informe ante este Tribunal en relación con una queja presentada por el Sr. Francisco Báez Rodríguez y su esposa Juanita Rosario contra el abogado notario Ángel L. Delgado. Luego de que uno de los Señores Jueces de este Tribunal determinara causa probable conforme las disposiciones de la Regla 13 de nuestro Reglamento, 4 L.P.R.A. Ap. I-A,(1) le ordenamos al Procurador General de Puerto Rico que radicara querella contra dicho abogado. En la misma se le imputó:

> El Lic. Angel L. Delgado actuó en forma ilegal, inmoral e impropia y en contravención a los cánones de ética profesional al autorizar una Escritura donde se aseveró la inexistencia de cargas y gravámenes cuando a él le constaba que ello no era cierto y cuando él mismo admitió que la cancelación del primer gravamen estaba fuera de sus manos. La conducta del abogado notario Angel L. Delgado viola la *Fe Pública* Notarial y el Canon 35 de los de ética profesional. *In Re Meléndez Pérez,* 104 D.P.R. [770] (1976); *In re Lavastida, et al.,* 109 D.P.R. 45 (1979); *Goenaga* v. *O'Neil de Milán,* 85 D.P.R. 170, 194 (1962). Querella, pág. 1.

## I

Los hechos que dan motivo a la radicación del transcrito cargo tienen su origen en una transacción de compra y venta que el matrimonio querellante, como compradores, llevara a

---

(1) Determinación de causa probable realizada por el ex Juez de este Tribunal, Hon. Carlos J. Irizarry Yunqué.

efecto en relación con una casa sita en la Urbanización Cupey Gardens, Río Piedras, Puerto Rico. La casa estaba afecta a una primera hipoteca por la suma de $26,271.46, siendo el acreedor hipotecario la Consolidated Mortgage Corp. El precio de venta a pagarse por los esposos Báez-Rosario lo era la suma de $45,000 de los cuales la Golden Mortgage Corp. le iba a hacer un préstamo hipotecario por la suma de $43,600. Con dicha suma de dinero se debía saldar, entre otros renglones, el préstamo original de $26,271.46 de la Consolidated Mortgage Corp.

El abogado Ángel L. Delgado era el notario que la Golden Mortgage Corp. utilizaba en todas sus transacciones. El día en que se iba a efectuar la compra y venta —19 de mayo de 1978— se le presentó a dicho letrado el siguiente desglose de pagos a realizarse por la Golden Mortgage Corp. con la suma de dinero ($43,600) financiada:

| | | |
|---|---|---|
| 1. | Gastos de Cierre | 1,579.71 |
| | Seguro de Título | 65.00 |
| 2. | Seguro de Título | 109.00 |
| | Sellos | 271.50 |
| 3. | Lcdo. Angel L. Delgado—Honorarios | 580.75 |
| 4. | Consolidated Mortgage Corp. | 26,271.46 |
| 5. | Secretario de Hacienda | 331.17 |
| | Telesforo Figueroa-Rosa Torres | 14,033.37 |
| 6. | Francisco Báez Rodríguez, Juanita Rosario | 358.04 |
| | Total | 43,600.00 |

Querella, pág. 2.

No obstante haber sido expedido un cheque por Golden Mortgage Corp. con el propósito de pagar la acreencia hipotecaria de Consolidated Mortgage Corp., dicha deuda —al momento de otorgarse la escritura de compraventa— no había sido pagada. En su consecuencia, tampoco se había cancelado la hipoteca que a esos efectos constaba inscrita en el

Registro de la Propiedad a favor de Consolidated Mortgage Corp.

Ello no obstante, el licenciado Delgado —en la escritura de compraventa que autorizara mediante la cual adquirieron la propiedad los querellantes—[2] hizo constar en el hecho tercero de la escritura que otorgara:

La parte vendedora afirma que la referida propiedad está libre de cargas y gravámenes hipotecarios. Querella, pág. 3.

Debido mayormente a dificultades económicas sufridas por ambas financieras, la deuda hipotecaria de Consolidated Mortgage Corp. nunca fue pagada; tampoco, en su consecuencia, fue cancelado dicho gravamen hipotecario en el Registro de la Propiedad. Resultado de ello ha sido que la propiedad adquirida por los esposos Báez-Rosario actualmente continúa afecta tanto a la hipoteca original por $26,271.46 como a la hipoteca de $43,600.

La posición asumida por el notario querellado es a los efectos de que él actuó conforme a la práctica común y corriente que prevalece en el ejercicio de la notaría en Puerto Rico y que como empleado que era de la Golden Mortgage Corp. al momento en que otorga la escritura en controversia "parte de su función, inherente a sus deberes para con dicha Corporación que lo empleaba, *era el facilitar el otorgamiento de los instrumentos* que se trajeran a su consideración". (Énfasis suplido.) Informe de Conferencia entre Abogados, 29 de noviembre de 1983, pág. 2.

En el informe que nos rindiera el Comisionado Especial que designáramos en el presente caso,[3] éste expresa que la "prueba presentada es en el sentido de que la práctica se-

---

[2] El licenciado Delgado también otorgó en dicho día como notario la escritura de constitución de hipoteca referente al préstamo hipotecario por $43,600 que le hiciera Golden Mortgage Corp. a los esposos Báez-Rosario.

[3] Lcdo. Edwin R. Bonilla Vélez.

guida en esta transacción es una aparentemente generalizada en la industria", por lo que esta situación "debe ser motivo de una expresión clara que paute la norma a seguir por los Notarios, atemperando así la ley con la realidad, en transacciones como las que aquí nos ocupan". Informe y Conclusiones de Hechos del Consumidor [*sic*], 5 de diciembre de 1984, pág. 6.

El Procurador General de Puerto Rico, en un escrito en que comenta el informe rendido por el Comisionado Especial, igualmente nos exhorta a orientar a la profesión en general sentando "la pauta a regir" en esta clase de situaciones.

## II

En *In re Meléndez Pérez*, 104 D.P.R. 770, 774 (1976) expresamos:

Cuando en 1906 la Asamblea Legislativa derogó la Ley del Notariado declarando que "solo podrán en lo sucesivo ejercer dicha profesión [notarial], los abogados que hayan sido admitidos a practicar como tales ante las Cortes de Justicia por la Corte Suprema" (Ley de 8 de marzo de 1906, Leyes de ese año, pág. 141), se propuso fortalecer los recursos intelectuales del notariado y enriquecer su función social, poniendo a disposición de la sociedad un notario que es además un técnico conocedor del Derecho. *Por tradición, y en nuestra patria además por expresión legislativa, el notario no es simple observador del negocio jurídico que ante él se realiza limitando su actuación a cerciorarse de la identidad de partes, y autenticidad de las firmas.* Su función, que no es privada, sino pública, trasciende la de un autómata legalizador de firmas y penetra al campo de legalidad de la transacción que ante él se concreta. *¿Cómo guardar silencio ante una situación lesiva para cualquiera de los otorgantes, si su entrenamiento legal le hace testigo de la irregularidad?* ¿Para qué otra cosa sirve su profesión de abogado por ley puesta a disposición de las partes en su despacho notarial? En su deber de ilustrar, y dar consejo legal a las partes contratantes, no hay guardarraya

que separe al notario del abogado. *El notario que impasible ve consumarse en su presencia un pacto cuyas consecuencias legales ignora alguna de las partes o que pudiendo hacerlo, por ser abogado, rehúsa explicar a los menos informados del significado y proyecciones de cláusulas para ellos poco menos que ininteligibles; el notario que limita su intervención rutinaria a leer o dar a leer el documento a los otorgantes y asegurarse de la identidad de sus personas y firmas, en un ritual aséptico pero vacío de la inteligencia y comprensión de los firmantes, está con su desidia derrotando los fines y propósitos que le hicieron depositario de inapreciable confianza pública.* En la práctica notarial con rareza se dan las circunstancias de urgencia e imprevisión que a veces frustran la abogacía por lo que son contadas las ocasiones en que un notario pueda acogerse al palio de olvido, inadvertencia o negligencia excusable. El consejo del abogado notario debe guiar la redacción del documento público y dar luz en el acto final de otorgamiento.

*La función del notario trasciende el acto externo de legalización de unas firmas.* Presupone la creación de un nivel de entendimiento y comunicación entre el fedante y los otorgantes que le permite a éstos formar una racional conciencia del acto en que concurren. *La fe pública notarial tiene como base la voluntad ilustrada de los contratantes; no puede ser fruto de la ignorancia y la obscuridad.* El notario, principal instrumento de la fe pública, tiene la indeclinable obligación de propiciar y cerciorarse de ese estado de conciencia informada supliendo las explicaciones, aclaraciones y advertencias en todo caso en que hagan falta para lograr el consentimiento enterado de los otorgantes al acto notarial. *Ha de dar fe y autenticidad "conforme a las leyes";* imperativo declarado en la Sec. 1a de la Ley Notarial de 1906 y ratificado en la actual de 1956. (4 L.P.R.A. secs. 1001 *et seq.*) *La sociedad debe tener en todo notario una garantía de certeza y de limpieza en los actos y contratos cuya autenticación le encomienda, condiciones que sólo pueden lograrse a la luz del entendimiento.* Cuando por Ley de 8 de marzo de 1906 se instauró la práctica del notariado exclusivamente por abogados admitidos al ejercicio de la profesión se elevó la calidad de la fe pública en Puerto Rico, y simultáneamente se exigió de los notarios una

mayor aportación técnica, una mejor ilustración y consejo que realzara la percepción por los contratantes de los particulares y consecuencias de su aceptación del documento sometido para su firma. *El notario que falla a la sociedad y a los que ante él comparecen en este fundamental aspecto de aclaración e ilustración será el coautor de un consentimiento enfermo e ineficaz en derecho y habrá traicionado la fe de la que es principal guardador.* El cumplimiento de los deberes del notario no tendrá dispensa por estar sumergida su actuación en el régimen o sistema de ejercicio del notariado por un bufete pluralizado. La responsabilidad del notario es personal e indivisible. (Énfasis suplido y escolios omitidos.)

Lo anteriormente expresado dispone del "argumento-excusa" del licenciado Delgado a los efectos de que él otorgó la escritura en controversia en los términos en que la misma estaba redactada por razón de que parte de su función, inherente a sus deberes para la corporación que lo empleaba, *era el facilitar el otorgamiento de los instrumentos* que se trajeran a su consideración.

■ La fidelidad que le pueda deber un abogado notario en un momento determinado a un cliente que le produce grandes beneficios económicos nunca puede ser mayor que la lealtad que todo notario en nuestra jurisdicción tiene que tener para con la fe pública notarial y la sociedad en general. El principal juzgador de la conducta de un abogado no es este Tribunal; lo es su propio honor y conciencia. El honor ni es susceptible de división ni debe estar nunca a la venta.

En el presente caso, el notario querellado se enfrentó a una situación sumamente común en nuestros tiempos; esto es, el otorgamiento de escrituras en un negocio de refinanciamiento en que el pagaré hipotecario original no está en ese momento ante él para poder ser cancelado en el mismo acto. Ello, como sabemos, debido a las complejidades del mundo del financiamiento moderno. La situación ni era difícil ni resultaba insuperable.

Su deber, ante todo, era ilustrar y explicarle la situación a todas las partes envueltas en la transacción; en específico, a los compradores de la propiedad. Ello le brindaba la oportunidad a éstos de tomar la decisión que entendieran procedente estando debidamente informados. Debe recordarse que el abogado en sus funciones notariales "no representa a cliente alguno, representa la fe pública". *In re Raya*, 117 D.P.R. 797 (1986).

En adición, era el deber del notario querellado hacer constar en la escritura pública que otorgó el hecho de que la propiedad objeto de la compra y venta estaba afecta a una hipoteca y que se retenía del precio a pagarse por la misma a los vendedores la suma de dinero correspondiente al balance de dicha hipoteca y el hecho de que tenía ante sí el cheque que había sido expedido a esos efectos.

El notario querellado, desafortunadamente, no actuó conforme lo anteriormente expresado, lo cual constituye la práctica vigente y aceptable. Otorgó una escritura donde se aseveraba que la propiedad en controversia estaba "libre de cargas y gravámenes hipotecarios" cuando a él le constaba lo contrario. Tampoco ilustró a las partes sobre esa situación. Dicha actuación infringe la fe pública notarial y el Canon 35 de Ética Profesional, 4 L.P.R.A. Ap. IX.[4] Su pro-

---

[4] *"Canon 35.—Sinceridad y honradez*

"La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.

"No es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho. Es impropio variar o distorsionar las citas jurídicas, suprimir parte de ellas para transmitir una idea contraria a la que el verdadero contexto establece u ocultar alguna que le es conocida.

"El abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar afidávits u otros documentos, y al presentar causas. El destruir evidencia documental o facilitar la desaparición de evidencia testifical en un caso es también altamente reprochable." 4 L.P.R.A. Ap. IX.

ceder amerita la separación por un período de un año del ejercicio de la notaría en Puerto Rico.

### III

¿Amerita esta clase de situación que le exijamos "algo más" al notario que participa en la misma?

Reconocemos que dada la complejidad y sofisticación del negocio de las finanzas en el mundo en que hoy en día nos desenvolvemos no debemos sentar una norma que requiera que el notario que otorga las escrituras de un refinanciamiento tenga ante sí, con el propósito de cancelarlo, el pagaré hipotecario correspondiente a la hipoteca que grava la propiedad. En muchas ocasiones dicho pagaré es negociado por el acreedor original a inversionistas del exterior y el mismo sale fuera de Puerto Rico. Requerir que la hipoteca que garantiza dicho pagaré sea cancelada en el mismo acto en que se otorgan las escrituras del refinanciamiento podría representar la paralización del tráfico comercial en nuestro país.

Ahora bien, si es que queremos que nuestra ciudadanía cada día tenga más fe y confianza en la profesión de la abogacía en general y en la fe pública notarial en particular, somos del criterio que debemos establecer una norma intermedia; esto es, una que garantizando al máximo los derechos de las partes otorgantes no afecte en forma sustancial el tráfico comercial. Lo hacemos bajo el poder inherente que tiene este Tribunal de reglamentar la profesión legal en general. *In re Díaz Alonso, Jr.,* 115 D.P.R. 755 (1984); *In re Rodríguez Torres,* 104 D.P.R. 758 (1976).

■ No creemos que resulte oneroso que exijamos que el abogado notario que otorga las escrituras de un refinanciamiento requiera que el cheque mediante el cual se pretende pagar la deuda hipotecaria existente sea un cheque "de gerente" o uno "certificado" y que dicho notario tenga la res-

ponsabilidad de asegurarse, después del otorgamiento, que dicho cheque sea debidamente remitido al acreedor hipotecario, o su representante autorizado, para que se pueda proceder a la cancelación de la hipoteca original.(5) Ello impedirá que sucedan situaciones como la ocurrida en el presente caso; esto es, que un comprador de una propiedad se encuentre en la triste y desesperante situación de que la propiedad por él adquirida responde por dos hipotecas en lugar de una.

*Se dictará sentencia de conformidad.*

El Juez Presidente Señor Pons Núñez emitió voto concurrente y disidente, al cual se une el Juez Asociado Señor Hernández Denton. El Juez Asociado Señor Negrón García se inhibió.

—O—

Voto concurrente y disidente del Juez Presidente Señor Pons Núñez, al cual se une el Juez Asociado Señor Hernández Denton.

Estamos conformes con las partes I y II de la opinión del Tribunal emitida por voz del Juez Asociado Señor Rebollo López. También estamos conformes con el resultado dispositivo del caso.

En cuanto a la parte III de la opinión discrepamos en parte. Creemos, en abstracto, en los méritos de la norma que se propone. Quisiéramos, sin embargo, que la misma se avalara por la experiencia de aquellos que laboran en la práctica notarial, así como por otros profesionales íntimamente relacionados con dicha práctica. Tenemos la oportunidad de así hacerlo en este asunto.

---

(5) Dicha norma tendrá vigencia prospectiva. La promulgación de la misma en el día de hoy no es impedimento para que la Comisión sobre la Reglamentación del Ejercicio y Admisión al Notariado la evalúe y haga las recomendaciones que estime pertinentes.

El pasado 1ro de septiembre de 1987 este Tribunal, en virtud de las disposiciones del Art. 61 del Tít. VIII (Reglamentación e Inspección de Notarios) de la Ley Núm. 75 de 2 de julio de 1987 (4 L.P.R.A. sec. 2011), conocida como la Ley Notarial de Puerto Rico, designó una Comisión sobre la Reglamentación del Ejercicio y Admisión al Notariado. La misma está compuesta por distinguidos profesionales relacionados con distintos aspectos de la notaría y se encuentra en funciones laborando en el descargo de la encomienda que le hiciera este Tribunal. Entendemos que antes de adoptarse la norma propuesta debe referirse a esa Comisión para su evaluación. El estudio y análisis que la Comisión haga de la norma propuesta, con las posibles recomendaciones que ello acarree, nos puede proveer mayor certeza de que la norma o regla que adoptemos se ajusta a nuestra realidad y conjura en lo posible la situación que se quiere remediar.

Usualmente, cuando este Tribunal ha ejercido su función de reglamentar ha procurado obtener el asesoramiento de aquellos sectores en la comunidad legal entendidos en la materia a reglamentarse, mediante encomienda al efecto a alguno de sus funcionarios o mediante la creación de una comisión. Se ha hecho en relación con las Reglas de Procedimiento Civil, de Evidencia, de Procedimiento Criminal y de Asuntos de Menores.

No vemos razón para no hacerlo así en este caso, especialmente cuando ya existe una comisión que posiblemente puede proveernos orientación adicional.