En el Tribunal Supremo de Puerto Rico

| In Re: | Moción Civil |
|---|---|
| Angel Mundo Rodríguez | 98TSPR120 |

Número del Caso: MC-87-8

Abogados Parte Querellante:   Hon. Carlos Lugo Fiol
                              Procurador General
                              Lcda. Ivonne Casanova Pelosi
                              Procuradora General Auxiliar

Abogado Parte Querellada:     Por Derecho Propio

Fecha: 9/10/1998

Materia:  Incapacidad Mental

Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correciones del
proceso de compilación y publicación oficial de las
decisiones del Tribunal. Su distribución electrónica se hace
como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In Re:

Angel Mundo Rodríguez                    MC-87-8

PER CURIAM

San Juan, Puerto Rico a 10 de septiembre de 1998

Mediante Opinión Per Curiam emitida el 16 de octubre de 1992, este Tribunal separó indefinidamente de la profesión de abogado al Lcdo. Angel Mundo Rodríguez por el fundamento de incapacidad mental, según dispuesto en la Regla 13.1(a) del Reglamento del Tribunal Supremo de Puerto Rico[1] vigente al momento

---

[1] La citada Regla disponía lo siguiente:

"§ 13.1. Casos de incapacidad mental de abogados
(a) La incapacidad mental, definida como una condición mental o emocional tal que impida al abogado asumir competente y adecuadamente la representación legal de sus clientes o le impida mantener el patrón de conducta profesional que debe observar todo abogado, será causa de suspensión." 4 L.P.R.A. Ap. I-A, sec. 13.1(a).

de los hechos y siguiendo el procedimiento establecido en la Regla 13.1(c) del mismo[2].

En aquella ocasión, el Comisionado Especial designado en el caso concluyó que, conforme a la prueba presentada, el Lcdo. Mundo sufría un trastorno depresivo moderado crónico causado por el abuso del alcohol, condición que le impedía ejercer adecuadamente la profesión. A base de ello, recomendó su suspensión indefinida. En dicha ocasión, estimamos probado el hecho de que el Lcdo. Mundo estaba impedido de ejercer adecuadamente la profesión. En consecuencia, lo separamos indefinidamente del ejercicio de la abogacía y de la notaría. Claro está, aclaramos que, conforme la norma vigente en nuestro ordenamiento, este tipo de suspensión por incapacidad mental constituye una medida especial de protección social y no un desaforo[3]. Finalmente,

---

[2] La Regla 13.1(c) del Reglamento del Tribunal Supremo en aquel momento disponía:

"Cuando en el curso de cualquier procedimiento disciplinario bajo la Regla 13 de este Reglamento surjan dudas sobre la capacidad mental del abogado querellado, el Tribunal, motu proprio o a instancias del Procurador General o del querellante nombrará a un Comisionado Especial —si no lo hubiere aún— para que reciba prueba sobre la incapacidad mental del abogado de acuerdo a la definición en el inciso (a) de esta regla. En estos casos se nombrará un panel de tres (3) médicos siquiatras para que éstos examinen al abogado y ofrezcan su testimonio pericial ante el Comisionado Especial. El panel de siquiatras será designado así: uno nombrado por el Comisionado Especial, otro por el Procurador General de Puerto Rico y el tercero por el abogado querellado. Las designaciones deben hacerse dentro del término de diez (10) días desde la fecha de la notificación de la Resolución del Tribunal ordenando este procedimiento. Si dentro de ese término el Procurador General o el querellado no hacen la designación correspondiente, el Comisionado Especial lo hará por ellos. Una vez designado el panel de siquiatras, el Comisionado Especial señalará fecha para la celebración de una vista para no más tarde

expresamos que, si cesaba la incapacidad, el Lcdo. Mundo
Rodríguez podía solicitar reinstalación de acuerdo a lo
establecido en la Regla 13.1(h) de nuestro reglamento[4].

---

de treinta (30) días a partir de la designación de los
siquiatras. Durante ese término los siquiatras examinarán
al querellado y rendirán un informe al Comisionado
Especial, quien notificará con copia de dicho informe al
Procurador General y al querellado. Durante la vista ante
el Comisionado Especial el Procurador General y el
querellado, representado por su abogado, podrán presentar
sus objeciones a los informes de los siquiatras y habrá
oportunidad de interrogar y contrainterrogar a dichos
médicos. Durante la vista ante el Comisionado Especial,
el Procurador y el querellado podrán presentar otros
testigos y habrá derecho a contrainterrogar; también se
podrá presentar y examinar prueba documental. No se
aplicarán las reglas de descubrimiento de prueba y el
Comisionado Especial resolverá los planteamientos sobre
admisibilidad conforme a derecho, mas no se reconocerá
privilegio a la comunicación entre el querellado y los
siquiatras del panel. El Comisionado deberá presentar su
informe al Tribunal –con copia a las partes– dentro de
los treinta (30) días de celebrada la vista y la
presentación final de la prueba; junto al informe
remitirá toda la evidencia documental y material que
hubiese sido presentada, incluyendo los informes de los
siquiatras. La evidencia presentada y no admitida deberá
identificarse claramente como tal y el Comisionado
indicará la razón por la que no fue admitida. 4 L.P.R.A.
Ap. I–A, sec. 13.1(c).

[3] In re: Miranda Cruz, 116 D.P.R. 709 (1985); In re: Calderón
Molinary, 115 D.P.R. 796 (1984); In re: Lanauze Ortiz, 114 D.P.R.
682 (1983); In re: Suárez Burgos, 108 D.P.R. 1 (1978).

[4] La Regla 13.1(h) del Reglamento del Tribunal Supremo, al momento en
que se dictó la Resolución, establecía:

"Suspendido un abogado bajo las disposiciones de
esta regla, el querellado podrá presentar una moción de
reinstalación ante el Tribunal. La moción deberá ser
formulada luego de transcurridos treinta (30) días de
haber cesado la incapacidad. Presentada una moción de
reinstalación el Tribunal nombrará un Comisionado
Especial y se designará un panel de tres siquiatras
conforme a lo dispuesto en el inciso (c) de esta regla.
El querellado se someterá a exámenes médicos ante los
siquiatras y estos someterán un informe al Comisionado
Especial, quedando a discreción de éste la celebración de
una vista con la intervención del Procurador General,
salvo que el Tribunal, a moción del querellado o motu
proprio ordenare la celebración de vista. El Comisionado
Especial rendirá finalmente un informe al Tribunal y éste
resolverá. Si solicitada la reinstalación por el
querellado se celebra una vista ante el Comisionado
Especial, la relación entre el querellado y los
siquiatras que lo examinaren durante la vigencia de la
suspensión no gozará del beneficio de comunicación

Ordenamos la incautación de su obra notarial y su entrega a la Oficina de Inspección de Notarías.

El 1 de octubre de 1996, el Sr. Mundo presentó moción de reinstalación alegando que había superado la situación de alcoholismo y, por tanto, que su incapacidad había cesado al presente. Alegó además, que había sido evaluado por el Departamento de Asuntos del Veterano de los Estados Unidos de América, concluyéndose que él no estaba mental o físicamente incapacitado[5]. A base de lo anterior, el Sr. Mundo solicitó que se continuara con el procedimiento de reinstalación de acuerdo a la Regla

---

privilegiada a los fines de los interrogatorios que puedan surgir durante la vista.

En casos bajo el inciso (b) de esta regla, una determinación judicial de que el abogado no está mentalmente incapacitado será suficiente para que el Tribunal levante la suspensión." 4 L.P.R.A. Ap. I-A sec. 13.1(h).

[5] Tal conclusión surge de un documento que acompañó el querellado titulado *Rating Decision* y fechado 13 de mayo de 1996 mediante el cual el Departamento de Asuntos del Veterano denegó al Sr. Mundo el derecho a una pensión por incapacidad luego de determinar, tras una evaluación, que éste no estaba incapacitado. Para cualificar se exige 60% o más si es una sola incapacidad o 70% si son dos o más incapacidades combinadas y una de ellas es de 40% o más y el veterano es, a juicio de la agencia, incapaz de obtener o dedicarse una ocupación provechosa como resultado de dicha incapacidad. La Agencia encontró que el veterano sólo tiene una incapacidad de un 10%. Sin embargo, su examen mental reveló que a pesar de encontrarse alerta y orientado, estaba ansioso y deprimido. El resultado de dicho examen mental dispone específicamente:

"Mental exam noted he is alert and oriented in the 3 spheres. Mood is anxious and somewhat depressed. Affect is blunted. [A]ttention is fair. [C]oncentration is fair. Speech is clear, coherent and loud. Judgement is poor. He is consider[ed] competent to handle funds."

El querellado, además del documento antes mencionado, acompañó una declaración jurada suya --de la cual no surge la fecha-- y un certificado de Ordenanza al oficio de *Elder* en el Sacerdocio de Melquisedec en la Iglesia de Jesucristo de los Santos de los Últimos Días, fechado el 14 de julio de 1996.

15(h) del Reglamento del Tribunal Supremo de Puerto Rico[6], sobre casos de incapacidad mental de abogados.

El 18 de octubre de 1996, luego de considerar la moción presentada por el Sr. Mundo, este Tribunal designó al Lcdo. Agustín Mangual Hernández[7] como Comisionado Especial para que recibiera prueba sobre la condición mental del Sr. Mundo --incluyendo testimonio pericial de un panel seleccionado según la Regla 15(h) del Tribunal Supremo[8]-- y para que rindiera un informe dentro de los plazos especificados en la referida regla.

El 13 de noviembre de 1996 el Comisionado Especial emitió una orden nombrando al Dr. Domingo Cordero como perito para que examinara al Sr. Mundo y sometiera un informe sobre sus conclusiones. Además, ordenó al Sr. Mundo comunicarse con la oficina del referido médico para que coordinara las citas necesarias y ordenó al Procurador General y a Mundo Rodríguez que, en el término de diez (10) días notificaran el nombre y dirección del perito siquiatra que hubiesen elegido. El 25 de noviembre de 1996, el Procurador General presentó una moción informando, entre otros asuntos, haber elegido a la Dra. Haydée Costas como perito siquiatra. El Sr. Mundo, por su parte, informó el 17 de enero de 1997 la selección de la

---

[6] Según aprobado el 13 de enero de 1995 y enmendado posteriormente, 4 L.P.R.A. Ap. XXI sec. 15(h). Esta Regla sustituyó la anterior Regla 13.1(h) del Reglamento del Tribunal Supremo.

[7] Ex-Juez del Tribunal Superior.

Dra. Myrna Zegarra como la perito siquiatra que lo evaluaría.

El 31 de enero de 1997, el Procurador General —mediante moción— solicitó permiso a este Tribunal para contratar al sicólogo Jorge Montilla para que administrara al Sr. Mundo una prueba neurosicológica, la cual, según la Dra. Haydée Costas, era indispensable para determinar con mayor precisión las posibles limitaciones en el funcionamiento mental del peticionario causadas por la excesiva ingestión de alcohol durante un periodo tan prolongado de tiempo[9].

Referimos la mencionada solicitud al Comisionado Especial para que, luego de que el panel de tres (3) médicos siquiatras examinara al querellado y rindieran su testimonio pericial, ofreciera su recomendación en cuanto a la necesidad de contratar al sicólogo Montilla para que administrara al peticionario la prueba neurosicológica recomendada.

El 12 de mayo de 1997, se radicó el informe del Dr. Domingo Cordero Alonso[10] —perito nombrado por el Comisionado Especial— con relación al Sr. Mundo. El facultativo recomendó la asistencia del peticionario a

---

[8] 4 L.P.R.A. Ap. XXI, sec. 15(h). El texto de esta Regla coincide prácticamente en su totalidad con el texto de la Regla 13.1(h) anteriormente transcrito.

[9] Opina la Dra. Costas, en la carta fechada 25 de enero de 1997 que acompañara el Procurador General a la moción que presentara, que en el caso del Sr. Mundo está presente un déficit orgánico cerebral secundario a daño estructural en las células cerebrales como consecuencia del abuso del alcohol.

[10] Este informe tiene fecha del 5 de mayo de 1997.

Alcohólicos Anónimos para que mantuviese su sobriedad. Además, sugirió intervención siquiátrica para que se continuara así un proceso evaluativo que, con mayor certeza clínica, definiera o identificara un posible diagnóstico siquiátrico. Añadió que si ese fuera el caso, podría beneficiarse de ayuda profesional de enfoque sicoterapéutico con el posible beneficio, a su vez, del uso de medicación.

El 14 de mayo de 1997, luego de solicitarse una prórroga, se radicó el informe de la Dra. Haydée Costas[11]. Esta, según ya mencionáramos, recomendó las pruebas neurosicológicas porque, a su entender, el Sr. Mundo presentaba signos que sugerían la posibilidad de la existencia de un daño cerebral orgánico secundario a sus largos años de consumo de alcohol. De acuerdo a la Dra. Costas, Mundo podría llevar a cabo funciones de abogado con las limitaciones específicas que sus pares considerasen pertinentes.

El 29 de mayo de 1997, el Comisionado Especial mediante orden a esos efectos, recordó al peticionario que el término que tenían los peritos para presentar sus informes había vencido. Aún así, concedió diez (10) días para que la Dra. Zegarra, la perito seleccionada por éste, sometiera su informe. No habiendo cumplido el Sr. Mundo, el 5 de agosto de 1997 el Comisionado Especial dictó una orden advirtiéndole que si no sometía el

---

[11] Este informe tiene fecha del 9 de mayo de 1997.

informe de la perito en diez (10) días, se archivaría el caso por falta de interés. El 12 de agosto de 1997, Mundo Rodríguez presentó moción de prórroga solicitando veinte (20) días adicionales y el 21 de agosto de 1997 el Comisionado le concedió hasta el 5 de septiembre.

El 28 de agosto de 1997, se radicó el informe de la Dra. Zegarra[12] quien no encontró presencia de condiciones psiquiátricas. Sin embargo, advirtió la posibilidad de que existiera una disfunción cognocitiva en un grado mínimo, no detectable con las pruebas que ella había realizado al paciente por lo que sugirió que se le sometiera a unas pruebas neurosicológicas que aclararan este punto aún más. Recomendó, además, la Dra. Zegarra, que, para que Mundo continuara la remisión de su dependencia al alcohol, debía mantenerse activo en la Iglesia, por haber sido éste su instrumento más eficaz. Finalmente, sugirió que el peticionario sostuviera contacto regular con un siquiatra, sicólogo o consejero en alcoholismo. Según el criterio de esta profesional de la salud mental, la evaluación no reveló impedimento para que se permitiera el regreso del Sr. Mundo al ejercicio de la profesión legal, sujeto a la supervisión usual que la ley y los pares imponen a todos los abogados.

El 5 de septiembre de 1997 el Comisionado Especial señaló vista evidenciaria para escuchar a los peritos de las partes y cualquier otra prueba que quisiera presentar

el querellado. La vista se celebró el 15 de octubre de dicho año, compareciendo a la misma los tres (3) peritos.

Posteriormente, con fecha de 30 de octubre de 1997 el Comisionado Especial rindió su informe al Tribunal Supremo. Conforme a la prueba testifical y documental practicada, el Comisionado formuló las siguientes determinaciones de hecho:

"Este Honorable Tribunal, mediante Resolución de fecha 16 de octubre de 1992 separó al Lcdo. Angel M. Mundo Rodríguez indefinidamente del ejercicio de la abogacía y de la notaría luego de concluir que éste sufría de trastorno depresivo moderado crónico causado por el abuso del consumo de alcohol.

El Sr. Mundo Rodríguez, por derecho propio, radicó 'Moción de Reinstalación' en la Secretaría de este Honorable Tribunal el día 2 de octubre de 1996, en la que alegó que 'ha superado la situación de alcoholismo desde hace dos años y eventualmente la situsación (sic) o incapacidad ha cesado al presente'. Acompañó una Declaración Jurada a dicho escrito.

Mediante Resolución de fecha 18 de octubre de 1996, este Honorable Tribunal designó al suscribiente Comisionado Especial en este procedimiento. Iniciamos las gestiones para cumplir con lo dispuesto [sic] por la misma y lo dispuesto por la Regla 15 del Reglamento de este Honorable Tribunal.

No fue hasta el 28 de agosto de 1997 que el Sr. Mundo Rodríguez radicó el informe sometido por la perito psiquiatra seleccionada por éste, de conformidad con la mencionada Regla.

De los informes periciales sometidos surge que el Sr. Mundo Rodríguez ha estado inactivo y fuera del campo del derecho desde hace varios años.

La única gestión que ha hecho el Sr. Mundo Rodríguez para obtener ayuda para rehabilitarse

---

[12] Este informe tiene fecha del 11 de agosto de 1997.

es que fue bautizado en la Iglesia de Jesucristo de los Santos de los Ultimos Días en noviembre de 1995 y que se ha mantenido activo en dicha Iglesia.

El Sr. Mundo Rodríguez no produjo pruebas de que haya hecho o esté haciendo gestiones para recibir ayuda profesional en vista de su condición mental[.]

Los tres peritos psiquiatras en sus testimonios coinciden en que el Sr. Mundo Rodríguez necesita recibir tratamiento psiquiátrico.

Además, los tres peritos psiquiatras coincidieron en sus testimonios en que es necesario que al Sr. Mundo Rodríguez se le practiquen pruebas neuropsicológicas para verificar si como consecuencia del consumo excesivo de alcohol ha sufrido daño cerebral.

Según el informe pericial preparado por la Dra. Haydée Costas, el Sr. Mundo Rodríguez le informó que en el año 1993 fue ingresado en la cárcel por conducir un vehículo en estado de embriaguez.

Observamos el comportamiento del Sr. Mundo Rodríguez durante la vista de este procedimiento y nos percatamos de que, como concluyó la Dra. Haydée Costas, éste tiene problemas para controlar sus impulsos."

El Comisionado Especial, como consecuencia de las anteriores determinaciones de hecho, recomendó que no se reinstalara al Sr. Angel M. Mundo Rodríguez a la práctica de la profesión de Abogado y Notario hasta que éste probara haber recibido tratamiento siquiátrico y haberse dedicado al estudio del derecho, ya fuera mediante cursos en las escuelas de derecho o a través de un curso de repaso general del derecho, similar al que asisten los graduados de derecho antes de tomar la reválida.

Luego de considerar la totalidad del expediente, <u>coincidimos</u> totalmente con el criterio del Comisionado Especial.

I

El ejercicio de la abogacía es una tarea difícil y compleja. <u>In re Cardona Alvarez</u>, 116 D.P.R. 895, 902 (1986). A la misma vez, el Código de Etica que rige ésta profesión exige de sus miembros el cumplimiento de importantes deberes con el propósito de preservar el honor y la dignidad de la misma. Entre estos deberes se encuentran: el deber de desempeñar este alto ministerio con la mayor y más excelsa competencia, responsabilidad e integridad[13]; el deber de defender los intereses del cliente diligentemente, desplegando en cada caso el más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable[14]; el deber de mantener al cliente siempre informado de todo asunto importante en el caso que se le ha encomendado[15]; el deber de ser puntual en la asistencia y conciso y exacto en el trámite y presentación de las causas[16] y el deber de mantener una relación de respeto, cordialidad y cooperación entre compañeros[17].

---

[13] Preámbulo del Código de Etica Profesional, 4 L.P.R.A. Ap. IX.

[14] 4 L.P.R.A. Ap. IX, C. 18.

[15] 4 L.P.R.A. Ap. IX, C. 19.
[16] 4 L.P.R.A. Ap. IX, C. 12.
[17] 4 L.P.R.A. Ap. IX, C. 27, C. 29, C.30, C.31.

Como parte del poder inherente que tiene este Tribunal para reglamentar la profesión de abogado en nuestra jurisdicción, In re Soto López, Opinión y Sentencia de 5 de abril de 1994; In re Colton Fontán, 128 D.P.R. 1 (1991); In re Angel Delgado, 120 D.P.R. 518 (1988); In re Díaz Alonso, Jr., 115 D.P.R. 755 (1984); In re Franco Soto, 115 D.P.R. 740 (1984); In re Rodríguez Torres, 104 D.P.R. 758 (1976), se encuentra la ineludible responsabilidad de instituir y mantener un orden jurídico íntegro y eficaz que goce de la completa confianza y apoyo de la ciudadanía, Colegio de Abogados de Puerto Rico v. Lcdo. Reginald J. Barney, 109 D.P.R. 845, 847 (1980). Es por ello que nos corresponde, no sólo velar por la observancia --de parte de los abogados-- de los cánones de ética antes mencionados y tomar la acción disciplinaria o medida especial de protección social apropiada en casos de incumplimiento de las normas requeridas, Colegio de Abogados de Puerto Rico v. Lcdo. Reginald J. Barney, ante, sino que una vez tomada dicha acción o medida, nos atañe además, en los casos que así lo requieran, decidir en qué momento la acción disciplinaria o la medida especial ha logrado su propósito.

En virtud de lo anterior, concluimos que en el caso de autos la medida de especial de protección social impuesta al peticionario mediante nuestra Opinión Per Curiam de 16 de octubre de 1992, consistente la misma en

su suspensión indefinida, no ha cumplido cabalmente su finalidad. Veamos por qué.

En primer lugar, los tres (3) peritos seleccionados sostuvieron en sus respectivos informes que el peticionario debe recibir tratamiento siquiátrico. Coincidieron además en que éste debe ser sometido a evaluaciones más especializadas para determinar si como consecuencia del consumo excesivo de alcohol ha sufrido daño cerebral. El peticionario, por su parte, no produjo prueba de que hubiese hecho gestiones para recibir ayuda profesional en cuanto a su condición mental ni en cuanto a su condición de alcoholismo, ello a pesar de estar consciente de su situación y del contenido de los informes médicos. Tampoco produjo evidencia demostrativa de que su condición de alcoholismo estaba en remisión; esto es, sólo contamos con su propio testimonio a esos efectos.

Por otro lado, el Sr. Mundo lleva separado de la profesión más de cinco (5) años. No habiendo demostrado éste en la vista celebrada que se mantuvo informado en torno al desarrollo de la ciencia legal durante el período de tiempo en que no ha ejercido la abogacía, podemos concluir que sus conocimientos en derecho no están actualizados.

Finalmente, es preciso señalar que ciertas actuaciones de Mundo Rodríguez, al manejar su propia solicitud de reinstalación, levantan dudas sobre su

aptitud para atender casos de clientes potenciales. En este sentido nos preocupa, además, la determinación del Comisionado Especial a los efectos de que el Sr. Mundo tiene problemas para controlar sus impulsos.

En vista de lo anteriormente señalado, concluimos que el Sr. Mundo no puede cumplir adecuadamente con las exigencias que conlleva la profesión legal.

Habiendo sostenido anteriormente que en ausencia de una demostración de parcialidad, prejuicio o error manifiesto de parte del Comisionado Especial al apreciar la prueba, no alteraremos las determinaciones de hecho que éste realice, In re Carlos R. Soto López, ante; In re Colton Fontán, ante, en este caso hacemos nuestras las formuladas por el Lcdo. Agustín Mangual Hernández y asimismo adoptamos su recomendación. En consecuencia, se deniega su solicitud de reinstalación al ejercicio de la abogacía en nuestra jurisdicción.

Se dictará Sentencia de conformidad.

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

**In Re:**

**Angel Mundo Rodríguez**                    MC-87-8

SENTENCIA

San Juan, Puerto Rico a 10 de septiembre de 1998

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, se deniega la solicitud de reinstalación al ejercicio de la abogacía en nuestra jurisdicción, radicada por el Sr. Mundo Rodríguez.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Hernández Denton concurre en el resultado sin opinión escrita. El Juez Presidente señor Andréu García no intervino.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo