EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | Queja |
|--------|-------|
| Luis Rodríguez Bigas | 2001 TSPR 71 |

Número del Caso: AB-1993-108

Fecha: 9/mayo/2001

Oficina del Procurador General:

Lcdo. Iván F. Fuster Lebrón
Procurador General Auxiliar

Lcda. Edna Evelyn Rodríguez Benítez
Procuradora General Auxiliar

Oficina de Inspección de Notarías:

Lcda. Carmen H. Carlos
Directora

Abogado de la Parte Querellada:

Por Derecho Propio

Colegio de Abogados de Puerto Rico:

Lcdo. Jaime Ruberté

Abogado de la Asociación de Notarios de Puerto Rico:

Lcdo. Iván Díaz de Aldrey

Abogada del Instituto de Derecho Notarial y Registral del Colegio de Abogados de Puerto Rico:

Lcda. Nora L. Rodríguez Matías

Amicus Curiae:

Lcdo. Eugenio Otero Silva

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Luis Rodríguez Bigas                    AB-1993-108

Opinión del Tribunal emitida por el Juez Asociado SEÑOR REBOLLO LOPEZ

San Juan, Puerto Rico, a 9 de mayo de 2001

Conforme surge del resumen de los hechos pertinentes que hace el Procurador General de Puerto Rico, en su informe de 26 de marzo de 2001, allá para el 28 de febrero de 1991, José Juan Félix Dondeyne, y su esposa Carmen Zoraida Virella comparecieron ante el notario Luis Rodríguez Bigas y otorgaron la escritura número 35 de compraventa, mediante la cual le vendieron a la señora Jacqueline Félix Dondeyne, hermana del referido vendedor, una propiedad, sita la misma en la urbanización Alturas de Río Bayamón, por el precio convenido de $83,000.00, de los cuales en la escritura los vendedores confesaron haber

recibido $64,127.15 con anterioridad al acto de otorgamiento. Se hizo constar, <u>además</u>, que los esposos Félix Virella habían retenido la suma de $18,872.65 para saldar el balance de una primera hipoteca que los mencionados vendedores anteriormente habían otorgado a favor de R&G Mortgage Corp.[1] Esa suma debía ser pagada a la antes mencionada institución financiera por H-R Mortgage,[2] entidad bancaria hipotecaria con quien la compradora Jacqueline Félix Dondeyne financió el negocio, de forma que su hipoteca quedara en rango de primera.

H-R Mortgage <u>no</u> saldó la primera hipoteca, por lo que R&G Mortage reclamó el pago de la hipoteca a los esposos Dondeyne Virella. Debido a ello, el 4 de septiembre de 1992, el señor Félix Dondeyne radicó, ante la Sala Superior de Bayamón del Tribunal de Primera Instancia, demanda en daños y perjuicios contra H-R Mortgage Corporation y Humberto Ramírez Ferrer, presidente de la referida institución financiera.[3] El 12 de mayo de 1993, el foro de instancia emitió sentencia en rebeldía a favor de los demandantes y le ordenó a los codemandados compensar a los primeros y cancelar la primera hipoteca inscrita a favor de R&G Mortgage en el Registro de la Propiedad y sufragar los gastos de la cancelación de hipoteca.

En o alrededor de esa misma fecha, compareció el señor Félix Dondeyne ante la Oficina del Procurador General de Puerto Rico con el propósito de presentar una queja contra el notario Rodríguez Bigas, relativa la misma a la transacción antes mencionada. En su contestación a la queja de fecha 13 de octubre de 1992, el notario expresó que <u>era correcto</u> lo alegado por el señor Félix Dondeyne de que, al otorgar la escritura de compraventa, se había retenido el importe de la primera hipoteca para ser pagada por H-R Mortgage Corporation, pero que el cheque que le había sido mostrado durante el acto del otorgamiento, firmado por el licenciado Humberto Ramírez Ferrer,

---

[1] La propiedad también estaba gravada por una segunda hipoteca en garantía de un pagaré al portador, <u>pero en la referida escritura 35 se hizo constar que dicha hipoteca había sido satisfecha en su totalidad y que se cancelaba en la misma fecha del otorgamiento de la escritura.</u>

[2] En agosto de 1991 el Comisionado de Instituciones Financieras <u>le revocó la licencia a H-R Mortgage y le ordenó cesar sus operaciones.</u>

[3] Civil Núm. KDP-92-0812.

presidente y único accionista de dicha entidad financiera, <u>no</u> había sido enviado a R&G Mortgage Corp., esto es, al tenedor de la primera hipoteca.

Como explicación para tal situación indicó el notario Rodríguez Bigas que, según el licenciado Ramírez Ferrer, una empleada se había apropiado de tales fondos. Expuso, además, el mencionado notario que la compañía Commonwealth Land Title Insurance Company, quien había expedido la póliza de título en el caso, <u>había pagado a R&G Mortgage Corp. la totalidad del importe adeudado de la primera hipoteca</u>. En su contestación, sin embargo, el notario Rodríguez Bigas no indicó nada respecto a la cancelación en el registro de dicho gravamen. Mediante comunicación de fecha 24 de noviembre de 1992, el Procurador le concedió al referido notario diez (10) días para que remitiera copia de la escritura de cancelación así como del boleto de presentación de la misma en el Registro de la Propiedad.

Luego de varios incidentes procesales, el 2 de marzo de 1993 compareció el Lcdo. Rodríguez Bigas ante el Procurador General para informar que R&G Mortgage Corp. le había enviado el pagaré en cuestión, pero que el mismo se había extraviado en su oficina; solicitó, entonces, un término de treinta días para localizar el referido pagaré y, en caso de no poder encontrarlo, radicar el procedimiento de cancelación de pagaré extraviado correspondiente.

El 24 de noviembre de 1993, compareció el notario Rodríguez Bigas ante el Procurador, mediante declaración jurada, en la que hizo constar que para poder iniciar el procedimiento judicial sobre cancelación de pagaré extraviado, la compañía Commonwealth Land Title Insurance, entidad que satisfizo el importe de la primera hipoteca que retuvo y no pagó H-R Mortgage, requería que se le reembolsara la cuantía que había pagado; que se había comunicado con el licenciado Ramírez Ferrer para que le reembolsara tales dineros a la aseguradora, y que de no poder hacerlo, él los pagaría de su propio peculio.

El 2 de junio de 1994 el licenciado Rodríguez Bigas compareció, por derecho propio, ante la Sala de San Juan del entonces Tribunal de Distrito de Puerto Rico con el propósito de consignar la suma de $19,471.00 a beneficio de la Commonwealth Land Title Insurance Company y/o Osage Corporation, a

quien por instrucciones de la Commonwealth se le había endosado el pagaré.[4] El 14 de septiembre de 1994 el tribunal dictó sentencia en dicho caso de consignación declarando con lugar la misma.

El 13 de marzo de 1996 el licenciado Rodríguez Bigas presentó, ante el Tribunal de Primera Instancia, Sala Superior de Bayamón, demanda con el propósito de cancelar el pagaré extraviado, figurando como demandante el propio abogado y como demandados R&G Mortgage Corporation, Commonwealth Land Title Insurance, la compradora del inmueble Jacqueline Félix Dondeyne[5], el señor Félix Dondeyne, su esposa y su sociedad legal de gananciales.[6] De éstos, el señor Félix Dondeyne, su esposa y su hermana comparecieron a oponerse a que se cancelara el pagaré extraviado.

El tribunal de primera instancia estimó no dictar sentencia, en esos momentos, en el caso sobre cancelación de pagaré extraviado hasta tanto se dilucidara el pleito sobre daños y perjuicios, lo que ocurrió el 25 de febrero de 1997, cuando dicho foro dictó sentencia en el caso de daños desestimando la acción y, además, dictó sentencia en rebeldía en el caso de cancelación de pagaré extraviado declarándolo con lugar.

Inconforme, el señor Félix Dondeyne recurrió de dichas sentencias ante el Tribunal de Circuito de Apelaciones, foro apelativo que confirmó al tribunal de instancia mediante sentencia del 30 de septiembre de 1998. El 18 de mayo de 2000, el Tribunal de Primera Instancia dictó orden para que la Secretaría expidiera el Mandamiento de Cancelación de Pagaré solicitado por el licenciado Rodríguez Bigas en el caso CD-96-0676, expidiéndose dicho mandamiento en ese mismo día 18 de mayo.

---

[4] Civil Núm. 94-6008.

[5] El inmueble fue readquirido por el señor Félix Dondeyne en algún momento durante este proceso.

[6] Civil Núm. CD-95-2864, el cual fue consolidado con la acción en daños y perjuicios que el quejoso inició contra el abogado, una vez que la acción

El 21 de junio de 1996 este Tribunal remitió el expediente del caso a la Oficina de Inspección de Notarías para fines de investigación e informe, y, en cumplimiento con dicha orden el 18 de diciembre de 1996 la Oficina de Inspección de Notarías, por conducto de su Directora, Lcda. Carmen H. Carlos, sometió su Informe. En el mismo se expuso, en síntesis, que como norma general, el notario que opera en el mundo de la banca hipotecaria intentaba cumplir con la norma establecida en In re: Delgado, 120 D.P.R. 518 (1988), expresando en la escritura de compraventas las cargas y gravámenes de la propiedad objeto del negocio, sobre quién recae la responsabilidad de cancelar la hipoteca original y expresando la cantidad de dinero que retiene la compradora para satisfacer dicha hipoteca.

Expresó la Oficina de Inspección de Notarías, además, que las menos de las veces es que el notario indica en el instrumento público información sobre si el cheque es uno de gerente o certificado y que, de ordinario, el notario advierte que ha realizado las gestiones correspondientes para asegurarse que éste es debidamente remitido al acreedor hipotecario para que pueda procederse a la cancelación de la hipoteca original. Concluyó dicha Oficina, en lo que a la presente queja e In re: Delgado, supra, atañe, que el licenciado Rodríguez Bigas había expresado en la escritura lo que la mayoría de los notarios puertorriqueños hacían constar, en un intento de sustancialmente satisfacer la norma establecida en dicho caso. Por último, expuso que en la presente situación de hechos, la falta de diligencia y cuidado en el ejercicio notarial no surgía por razón de violentar la norma de In re: Delgado, supra, sino, mas bien, en el extravío del pagaré de parte del notario Rodríguez Bigas.

El 24 de enero de 1997 este Tribunal ordenó al Instituto de Derecho Notarial y Registral del Colegio de Abogados de Puerto Rico y a la Asociación de Notarios de Puerto Rico para que expusieran su posición en cuanto a la práctica prevaleciente y a la norma que entienden debe establecerse específicamente conforme a In re: Delgado, supra. Dichas instituciones han comparecido ante el Tribunal en cumplimiento de dicho requerimiento.

---

de daños y perjuicios fue trasladada al Tribunal Superior de San Juan a Bayamón.

I

Procede que señalemos que tanto la Asociación de Notarios de Puerto Rico como el Instituto de Derecho Notarial y Registral del Colegio de Abogados de Puerto Rico --no obstante aceptar que el fin o propósito que tuvo este Tribunal de proteger al máximo a nuestra ciudadanía al resolver In re: Delgado, ante, es uno loable y legítimo y que las situaciones, como la ocurrida en el presente caso, desafortunadamente continúan ocurriendo con frecuencia en nuestra jurisdicción, esto es, no se cancelan las hipotecas vigentes al financiarse o refinanciarse una propiedad --le recomiendan al Tribunal la revocación de la norma establecida en el antes citado caso.

En específico, señala la Asociación de Notarios que: la norma es demasiada onerosa para el notario; que el notariado puertorriqueño no debe ser utilizado para una labor de fiscalización; y que se consigue el fin o propósito deseado por este Tribunal meramente exigiéndole al notario que brinde a las partes --en especial, al comprador-- unas advertencias más detalladas sobre los riesgos que corre si no se cancela la hipoteca existente que grava la propiedad.

Por su parte, similar sugerencia nos hace el Instituto de Derecho Notarial y Registral del Colegio de Abogados; esto es, expresa, en síntesis, el Instituto que se le debe exigir al notario que advierta, en una manera que pueda entenderse cabalmente por todas las partes interesadas, el efecto, consecuencia e importancia de que se proceda a cancelar en el futuro la hipoteca original, conforme fuera estipulada por las partes.

Como podemos notar, estas dos instituciones son del criterio que unas precisas y específicas advertencias de parte del notario, sobre la existencia de la posibilidad de que no se cancelen los gravámenes existentes, son más que suficientes para satisfacer la preocupación que llevó a este Tribunal a establecer la norma en controversia en In re: Delgado, ante. No estamos de acuerdo.

II

En In re: Delgado, ante, intentamos solucionar la preocupante, inaceptable y recurrente situación de hechos en que, al venderse una propiedad que va a ser financiada por el comprador y que está gravada por una hipoteca anterior, la hipoteca original no es posteriormente cancelada a pesar del hecho de que expresamente se hace constar en la escritura pública que otorga el notario que se está reteniendo del precio a pagarse por la propiedad el monto de dicha hipoteca con el propósito de satisfacer y cancelar la misma; situación que tiene el inaceptable resultado o consecuencia de que el comprador de la propiedad posteriormente se encuentra en la triste y desesperante encrucijada de que la propiedad por él adquirida responde por dos hipotecas en lugar de una, esto es, la original y la que él otorgó el día de la transacción.

Al resolver el mencionado caso consideramos la opción de exigir y de establecer una norma que requiriera que el notario que otorga las escrituras de un financiamiento o refinanciamiento tuviera ante sí en ese momento, con el propósito de cancelarlo, el pagaré hipotecario correspondiente a la hipoteca original. Rechazamos, expresamente, en dicha ocasión la referida opción por estar conscientes de que, dada la complejidad y sofisticación del negocio de las finanzas en el mundo en que hoy vivimos, no debíamos establecer una norma que podría conllevar la paralización del tráfico comercial en nuestro país; ello por razón de que, en la mayoría de las ocasiones, el pagaré es negociado por el acreedor original a inversionistas del exterior y el mismo no está disponible en Puerto Rico al momento del refinanciamiento.

No estabamos dispuestos, sin embargo, a darle la espalda y dejar huérfanos de remedio a nuestros conciudadanos, los cuales son los que, en última instancia, sufren las severas consecuencias de esta clase de situación. Entendimos procedente, entonces, establecer una norma intermedia; una que, garantizando al máximo los derechos de las partes otorgantes, no afectara en forma sustancial el tráfico comercial.

En fin, establecimos en el citado caso la norma a los efectos de que el notario autorizante de una escritura de financiamiento, o refinanciamiento, debe exigir y cotejar al momento del otorgamiento la

existencia del cheque           --certificado o de gerente-- con el que se va a pagar la hipoteca original y que dicho notario debe asegurarse de que dicho cheque sea debidamente remitido al acreedor hipotecario, o su representante autorizado, para que se pueda proceder a la cancelación de la hipoteca original.[7]

Reiteramos, y reafirmamos, en el día de hoy la antes mencionada norma. Somos del criterio que la misma no es una que resulta excesivamente onerosa para el notario puertorriqueño como tampoco convierte a éste en agente fiscalizador alguno. Por el contrario, entendemos que la referida norma no sólo protege a nuestros conciudadanos sino que ayuda a que esa ciudadanía, cada día, tenga más fe y confianza en la profesión de la abogacía en general y en la fe pública notarial en particular. Le recordamos a los abogados notarios que el principal juzgador de la conducta y la labor que ellos realizan no es este Tribunal sino que lo es la opinión que de ellos tenga la ciudadanía en general, su propio honor y consciencia, y el conocimiento de que ejercen su profesión en la forma más completa, honrosa y honorable posible, siempre con el propósito de garantizar al máximo los derechos de sus conciudadanos.

Ahora bien, y acogiendo en parte, las sugerencias que nos han hecho tanto la Asociación de Notarios de Puerto Rico como el Instituto de Derecho Notarial y Registral del Colegio de Abogados de Puerto Rico, aprovechamos la oportunidad para establecer, como requisito adicional en esta clase de situaciones, la norma a los efectos de que el notario otorgante de la escritura de financiamiento o refinaciamiento debe advertirle a las partes --en específico, al comprador-- de que: el hecho de que existe un cheque y de que el mismo deberá ser remitido al acreedor hipotecario, con el propósito de que sea cancelada la hipoteca original que grava la propiedad, no constituye una garantía absoluta de que ello así será hecho; de que éste, el comprador, tiene el derecho de exigir que la referida hipoteca original sea cancelada en el mismo acto del refinanciamiento; y que, de renunciar

---

[7] Establecimos dicha norma bajo el poder inherente que tiene este Tribunal de reglamentar la profesión legal en general.

voluntariamente a dicho derecho, queda advertido y consciente de los riesgos y consecuencias de que así no se cancele.

Advertimos a la profesión legal en general, y a los notarios en particular, de que este Tribunal exigirá el fiel cumplimiento de la norma antes enunciada.

### III

Aclarado lo anterior, atendemos el caso específico del notario Luis Rodríguez Bigas. Este, no hay duda, constató la existencia del cheque, mediante el cual se pagaría la hipoteca original, al momento de la otorgación de la escritura de refinanciamiento. Al así actuar, intentó cumplir con In re: Delgado, ante. No se cercioró debidamente, sin embargo, de que dicho cheque le fuera enviado al acreedor hipotecario original. Ello no obstante, Rodríguez Bigas actuó de forma extremadamente diligente con el propósito de resolver la situación causada por su omisión, satisfaciendo, incluso, de su propio peculio el monto de la hipoteca original.

Somos del criterio que la situación específica del notario Rodríguez Bigas no amerita la imposición de sanción disciplinaria alguna. Meramente advertimos al referido notario sobre el cumplimiento estricto en el futuro de las normas aquí enunciadas.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LOPEZ
Juez Asociado

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**


In re:

Luis Rodríguez Bigas                    AB-1993-108




                            SENTENCIA

         San Juan, Puerto Rico, a 9 de mayo de 2001



         Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se provee no ha lugar al ejercicio de nuestra jurisdicción disciplinaria; meramente se advierte al referido notario sobre el cumplimiento estricto en el futuro de las normas aquí enunciadas.

         Lo acordó el Tribunal y certifica al Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez no interviene.




                         Isabel Llompart Zeno
                              Secretaria del Tribunal Supremo