En el Tribunal Supremo de Puerto Rico

| In Re: | Querella |
|---|---|
| Víctor M. Gómez Morales | 98TSPR139 |

Número del Caso: CP-89-94

Abogado de la Parte Querellante:     Hon. Carlos Lugo Fiol
                                     Procurador General

Abogado de la Parte Querellada:     Lcdo. Pedro Toledo González

Fecha: 10/22/1998

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Víctor M. Gómez Morales

                    CP-89-94

PER CURIAM

San Juan, Puerto Rico, a 22 de octubre de 1998

El Sr. Víctor M. Gómez Morales (en adelante Gómez Morale

fue admitido al ejercicio de la abogacía y el notariado

Puerto Rico en el 1979.  Comenzó a trabajar en la profesi

desde su admisión hasta el 5 de agosto de 1988, fecha en la q

fue sentenciado a cumplir una pena de dos (2) años de prisi

bajo el régimen de sentencia suspendida, por violación al Ar

404(a) de la Ley de Sustancias Controladas (posesión ilegal

sustancias controladas), Ley Núm. 4 de 23 de junio de 197

según enmendada, 24 L.P.R.A. sec. 2404(a).

Fue en atención a estos hechos que el 16 de febrero de 1989 el Procurador General presentó una querella contra Gómez Morales mediante la cual solicitó la inmediata separación de éste del ejercicio de la profesión legal.

El 23 de junio de 1989, habiendo aceptado Gómez Morales que padecía de una condición crónica de adicción a sustancias controladas, particularmente la heroína; que no postulaba ante los tribunales para evitar perjudicar su profesión o a alguna persona; y que su adicción le había afectado emocionalmente, se le suspendió provisionalmente del ejercicio de la profesión jurídica. Además, se le ordenó al Procurador General que, a tenor con la Regla 13.1 del antiguo Reglamento del Tribunal Supremo, iniciara los procedimientos correspondientes para determinar si su adicción lo incapacitaba para ejercer la profesión de abogado y notario. Finalmente, se designó al Lcdo. Enrique Rivera Santana como Comisionado Especial.[1]

Conforme al procedimiento establecido en la Regla 13.1(c), el Comisionado Especial constituyó un panel de tres (3) médicos compuesto por los Dres. Guillermo Santiago, Manuel Colón Vargas y Eliseo Encarnación Quilano. Éstos procedieron a examinar extensamente a Gómez Morales y, a la luz de sus hallazgos, rindieron informes fundamentados y explícitos.[2]

---

[1] Véase, In re Víctor Gómez Morales, 124 D.P.R. 383 (1989).

[2] La Regla 13.1(c), del Reglamento del Tribunal Supremo entonces vigente disponía lo siguiente:

> Cuando en el curso de cualquier procedimiento disciplinario bajo la Regla 13 de este Reglamento surjan dudas sobre la capacidad mental del abogado querellado, el Tribunal, motu proprio o a instancias del Procurador General o del querellante nombrará a un Comisionado Especial —si no lo hubiere aún— para que reciba prueba sobre la incapacidad mental del abogado de acuerdo a la definición en el inciso (a) de esta regla. En estos casos se nombrará un panel de tres (3) médicos siquiatras para que éstos examinen al abogado y ofrezcan su testimonio pericial ante el Comisionado Especial. El panel de siquiatras será designado así: uno nombrado por el Comisionado Especial, otro por el Procurador General de Puerto Rico y el tercero por el abogado querellado. Las designaciones deben hacerse dentro del término de diez (10) días desde la fecha de la notificación

El doctor Santiago, perito designado por la Oficina del Procurador General, expresó lo siguiente:[3]

> El Lcdo. [Víctor Gómez] Morales se presenta con una postura relajada, sin disturbios de la marcha ni tics o manerismos. El volumen de la voz es medio[,] así como el tono. La calidad es buena. La actitud del evaluado es una de cooperación, espontánea, amigable, sin evasivas ni suspicacia.
>
> El afecto es adecuado y apropiado, y el estado de ánimo también es apropiado. No hay disturbios [perceptibles].
>
> **La forma del pensamiento no presenta defectos, el paciente es lógico, coherente y relevante. El contenido del pensamiento es de lo que se le pregunta, elaborando el aspecto legal, como es de esperarse**.
>
> **El licenciado Gómez [Morales] está bien orientado en tiempo, en lugar y en persona. La memoria inmediata es excelente, así el evaluado no posee introspección ni autocrítica. El intelecto es superior, el pensamiento abstracto es muy sobre el promedio y los conocimientos generales son adecuados**. (Énfasis nuestro.)

---

de la resolución del Tribunal ordenando este procedimiento. Si dentro de ese término el Procurador General o el querellado no hacen la designación correspondiente, el Comisionado Especial lo hará por ellos. Una vez designado el panel de siquiatras, el Comisionado Especial señalará fecha para la celebración de una vista para no más tarde de treinta (30) días a partir de la designación de los siquiatras. Durante ese término los siquiatras examinarán al querellado y rendirán un informe al Comisionado Especial, quien notificará con copia de dicho informe al Procurador General y al querellado. Durante la vista ante el Comisionado Especial, el Procurador General y el querellado representado por abogado, podrán presentar sus objeciones a los informes de los siquiatras y habrá oportunidad de interrogar y contrainterrogar a dichos médicos. Durante la vista ante el Comisionado Especial, el Procurador General y el querellado podrán presentar otros testigos y habrá derecho a contrainterrogar; también se podrá presentar y examinar prueba documental. No se aplicarán las reglas de descubrimiento de prueba y el Comisionado Especial resolverá los planteamientos sobre admisibilidad conforme a derecho, mas no se reconocerá privilegio a la comunicación entre el querellado y los siquiatras del panel. El Comisionado deberá presentar su informe al Tribunal — con copia a las partes — dentro de los treinta (30) días de celebrada la vista y la presentación final de la prueba; junto al informe remitirá toda la evidencia documental y material que hubiese sido presentada, incluyendo los informes de los siquiatras. La evidencia presentada y no admitida deberá identificarse claramente como tal y el Comisionado indicará la razón por la que no fue admitida.

[3] Su informe fue emitido el 12 de diciembre de 1989.

Por su parte, el doctor Colón Vargas, psiquiatra designado por el Comisionado Especial, emitió también un informe en el cual hizo constar lo siguiente:[4]

> Actualmente, [Gómez Morales] se trata en [el Departamento de Servicios contra la Adicción] DESCA en el Programa de Metadona y [se] le administran por boca 30mg [treinta miligramos]. El paciente comenta que actualmente no usa ninguna sustancia o medicamentos, tan solo 30mg. de metadona por la mañana.
>
> El paciente se ve bien vestido, [mantiene] buena higiene, saluda con respeto y firmeza. Habla lógico, coherente y relevante. No se percibe[n] ideas paranoides. En el proceso de pensamiento no hay alucinaciones, no hay ideas delirantes, no se ve suspicaz. El estado de ánimo no es deprimido, su afecto es apropiado, no es ambivalente, ni autista, está bien orientado en las tres esferas [de tiempo, lugar y persona]. Su memoria es normal, su juicio es bueno, tiene buena auto estima, buena intromisión.

En sus comentarios, el doctor Colón Vargas señaló lo siguiente:

> Se trata de un profesional que alega haber sido acusado por sustancias controladas. Se ve una persona tranquila, lógica, coherente, relevante. Agradable en su intercomunicación. Es una persona inteligente, capacitada con aparente buen juicio. Estas personas que usan sustancias controladas entienden que ellos usan su propia farmacopea. Por ejemplo, el que está deprimido usa anfetamina o cocaína para estar más despierto y ponerse veloz, ya que las personas deprimidas están lentas, tristes, pesadas y dormidas. Los que está sumamente ansiosos usan heroína y derivados del opio, que los tranquiliza, los seda, les da sueño.
>
> Si a estas personas que utilizan su propia farmacopea se les orienta y se [les] lleva a la realidad, ellos pueden ser tratados por un psiquiatra. Pueden ser medicados y funcionan bien. En este caso lo importante sería que él se tratara con un psiquiatra y conocer la realidad de su estado emocional y tratarse. **Si el paciente se tratase con un psiquiatra, deja la metadona y toma medicamentos, podría funcionar a un nivel normal como cualquier otro profesional**. (Énfasis nuestro.)

Posteriormente, el Comisionado Especial celebró una vista a la que comparecieron el Procurador General, representado por el Lcdo. José

Roberto Vega, y Gómez Morales, por derecho propio. Estuvo presente

además el Dr. Manuel Colón Vargas, psiquiatra designado por el

Comisionado Especial. Se admitieron en evidencia los informes de los

doctores Santiago y Colón Vargas.[5] Además, el doctor Colón Vargas fue

interrogado bajo juramento por el Procurador General y el Comisionado

Especial.[6]

---

[4] Su informe fue emitido el 26 de febrero de 1990.

[5] El tercer perito, doctor Encarnación Quilano, psiquiatra designado por Gómez Morales, no emitió informe alguno. En la vista éste último señaló que había tenido dificultades con dicho médico, quien le reclamaba honorarios por unas citas a las que no pudo asistir. Por consiguiente, renunció a su derecho de traer a un psiquiatra que avalara su posición, mas no tuvo objeción alguna en dejar sometido el caso a base de los hallazgos y la opinión de los otros dos (2) peritos que lo examinaron.

[6] En lo aquí pertinente, el doctor Colón Vargas testificó lo siguiente:

> [doctor Colón Vargas]
>
> **Yo pienso que la condición de él [Gómez Morales] no le perjudica para ejercer como abogado, o sea que él puede postular**; eso es lo que yo pienso. Está bien lógico, bien coherente, bien relevante, una persona completamente normal. Hay lo siguiente, él está usando ahí un medicamento que se usa en distintas partes, áreas de gobierno u oficinas. Yo como profesional me gustaría que él en vez de que tomara ese medicamento en ese sitio, lo tomara en otra parte, que viera un psiquiatra, que estuviera psicoanalíticamente orientado para que él discutiera sus problemáticas, sus ansiedades, sus cosas y fuera bajando esos medicamentos y fuera tomando otras [sic] más apropiadas para él.
>
> [licenciado Vega]
>
> Doctor, necesito que me aclare, específicamente en su Informe usted establece que el medicamento al que usted hace alusión es el llamado metadona.
>
> [doctor Colón Vargas]
>
> Metadona, sí.
>
> [licenciado Vega]
>
> La utilización del mismo en la dosis que usted establece de [treinta] 30 miligramos, usted utiliza en su exposición la frase "tan sólo [treinta] 30 miligramos de metadona por la mañana". Al presente la utilización de ese mecanismo le impide a él realizar sus funciones de abogado.
>
> [doctor Colón Vargas]

Conforme a la prueba desfilada y con especial énfasis a lo dicho por los psiquiatras, el 21 de marzo de 1990 el Comisionado Especial emitió un informe en el cual concluyó que **Gómez Morales no tenía una dependencia a substancias controladas que le impidiera ejercer su profesión de abogado**. Respaldó, además, la recomendación específica del Dr. Manuel Colón Vargas a los fines de sustituir el actual tratamiento de metadona por tratamiento psiquiátrico.[7]

Avalado por la conclusión de que su condición de dependencia a sustancias controladas no le impedía ejercer la profesión legal, Gómez Morales solicitó a este Tribunal su reinstalación mediante mociones que presentó el 13 de marzo de 1992 y el 18 de enero de 1995. Mediante Resolución de 10 de octubre de 1995, se le concedió al Comisionado Especial un término de sesenta (60) días, para que actualizara su informe tras una nueva evaluación psiquiátrica del señor Gómez Morales.

---

No le impide. La metadona, hay personas que han usado hasta [noventa] 90 miligramos diarios; por eso yo digo tan solamente [sic] 30 que es una dosis bien baja. Y yo creo que [treinta] 30 miligramos de metadona es hablando con la persona un psiquiatra X hablando con él puede darle otro medicamento que no sea ese, ir quitando ese poco a poco y dando el otro y dejarlo estable en un medicamento X que no tenga que ir a esos sitios a buscarlo. [sic]

[licenciado Vega]

**Y como conclusión, en cuanto a si afecta el tratamiento que pueda recibir o no, ¿cuál sería su conclusión?**

[doctor Colón Vargas]

**O sea que el tratamiento que recibiera él le vendría bien no le afectaría en nada. Sería de provecho para él o cualquier persona que sea.**

[licenciado Vega]

**¿Le afectaría en sus funciones como abogado?**

[doctor Colón Vargas]

**No.** (Énfasis nuestro.)

[7] Cabe destacar que en su informe, el Comisionado Especial hizo alusión a la personalidad de Gómez Morales como una lógica, coherente y con buen juicio al expresarse.

En virtud de la resolución de 10 de octubre de 1995, el Comisionado Especial preparó un segundo informe el 27 de agosto de 1996. En dicho informe hizo constar que, a partir de junio de 1989, fecha en la que el señor Gómez Morales fue suspendido temporeramente del ejercicio de la profesión legal, éste se dedicó a trabajar en labores docentes y administrativas en colegios post-secundarios. Trabajó en el American Business College, Bayamón Technical College, y Ramírez Business College enseñando materias relacionadas con derecho mercantil, administración, psicología, sociología y relaciones humanas. En el último de estos colegios laboró también como Oficial de Admisiones. En esas tareas se desempeñaba para el 9 de noviembre de 1995, fecha en la cual declaró ante el Comisionado Especial. Del informe se desprende que, en el desempeño de sus labores, Gómez Morales es una persona estable, buen empleado y buen compañero de trabajo.

El Comisionado Especial hizo constar además que Gómez Morales fue objeto de una evaluación psiquiátrica por el Dr. Miguel A. García Jiménez (documento admitido sin objeción de ninguna parte), quien lo entrevistó los días 30 de noviembre de 1995 y 3 de enero de 1996. También fue sometido a un examen de laboratorio (de orina).

El doctor García Jiménez enfatizó en su informe el hecho de que Gómez Morales tenía una inteligencia superior al promedio. Señaló, además, que su modo de pensar es uno normal y lógico, coherente y pertinente y que está en contacto con la realidad.

A tenor con sus hallazgos, el doctor García Jiménez concluyó que, conforme al historial clínico (que obtuvo del propio paciente) y la evaluación psiquiátrica, se evidenciaba un ajuste social y ocupacional satisfactorio y que, a su parecer, **no había impedimento intelectual ni emocional que interfiriera con el ejercicio de la profesión**.

Cabe mencionar que, en entrevista con el doctor García Jiménez, el señor Gómez Morales afirmó no estar usando ni traficando con sustancias controladas. Admitió estar en tratamiento de metadona y que llevaba alrededor de diez (10) años en ese tratamiento. Además, expresó

arrepentimiento por lo que sucedió (refiriéndose a su condición de adicción).

Como parte de la evaluación, el doctor García Jiménez ordenó a Gómez Morales someterse a un examen de orina, que fue llevado a cabo en el laboratorio Las Marías Reference Laboratories, en Río Piedras, el 20 de diciembre de 1995. Dicho examen arrojó resultados negativos a cocaína, opiáceos y marihuana (aunque en el informe se hizo la salvedad de que los resultados no se emitían para fines legales y que para tales propósitos el examen debería hacerse por un médico distinto).

El 25 de junio de 1997, Gómez Morales presentó ante nos una Moción Informativa y de Prórroga mediante la cual indicó que se encontraba **totalmente rehabilitado al extremo que no usaba ningún tipo de sustancia controlada, incluyendo metadona, que no recibía tratamiento alguno y que sólo comparecía a citas de seguimiento**. Solicitó al Tribunal un término para someter la prueba documental que sustentaba lo antes expuesto. Accedimos a su petición.

El 22 de julio de 1997 Gómez Morales sometió una moción a la que acompañó los resultados de pruebas realizadas por el Caribbean Medical Testing Center y Las Marías Reference Laboratories el 9 de julio de 1997, las cuales fueron negativas para múltiples sustancias controladas incluyendo cocaína, opio, anfetaminas, metadona, nicotina, antidepresivos, entre otros. La moción también fue acompañada del informe del Dr. Javier Piazza, del Centro de Investigación y Tratamiento para la Adicción.

De dicho informe surge que, al 8 de julio de 1997, Gómez Morales se encontraba en el Programa de Rehabilitación Integral de la institución, en el cual se enfatiza el uso de un medicamento bloqueador que tiene la peculiaridad de que si el paciente ingiere opiáceos no le hace ningún efecto. Expresó, además, el doctor Piazza que como parte de dicho programa Gómez Morales participaba en terapias psicológicas y psiquiátricas a nivel individual, grupal y familiar y que, a la fecha del informe, el paciente se encontraba libre de drogas, participando

del seguimiento terapéutico y sometiéndose a pruebas de orina. Finalmente, expuso que hasta la fecha del informe, podía emitir una prognosis favorable.

**El 13 de abril de 1998** Gómez Morales sometió documentos adicionales en apoyo a su rehabilitación. En primer lugar, acompañó un comunicado del Centro de Investigación y Tratamiento para la Adicción dado el **31 de marzo de 1998** y firmado por el Dr. Javier Piazza, como Director Psicológico, y la Sra. Thalia Méndez, trabajadora social. Dicho documento está dirigido a Víctor Gómez Morales y, por su pertinencia, lo transcribimos a continuación:

> Por este medio le queremos felicitar por completar su Tratamiento de Rehabilitación Integral del Centro de Investigación y Tratamiento para la Adicción, CITA Puerto Rico.
> Su aprovechamiento ha sido uno de excelencia, demostrando firmeza, entereza y motivación para continuar una vida libre de sustancias.
> Esperamos siga firme con sus propósitos y lo invitamos a continuar ayudando a los nuevos compañeros que entran en el proceso terapéutico.
> Es un orgullo para CITA Puerto Rico haber contado con su participación en nuestra institución y demuestra nuevamente que "se puede" vivir libre de sustancia.
> Usted es un vivo ejemplo para todas las personas que han pasado por una problemática de drogas que se puede cambiar y vivir una nueva vida.

También Gómez Morales acompañó una carta suscrita por el Lcdo. José A. Rivera Cordero, del Bufete Rivera Mercado y Rivera Cordero, con fecha de 2 de abril de 1998, en la cual indica que Gómez Morales se desempeña como Técnico Legal de su oficina desde septiembre de 1997 y, que entre sus labores se encuentran la de examinar expedientes y redacción de documentos. Expresa el licenciado Rivera Cordero en dicha misiva que Gómez Morales ha desempeñado sus tareas de manera diligente y competente y que conoce las circunstancias que movieron a este Tribunal a suspender provisionalmente a Gómez Morales de la práctica activa de la profesión. Entiende que el comportamiento de Gómez Morales como ser humano y profesional denota una recuperación total que le ha permitido brindarle su plena confianza y considerarle como potencial miembro de su firma para desempeñarse como abogado

licenciado, de ser reintegrado a la profesión togada.  Recomienda, pues sin reserva alguna, la restitución del mismo a la profesión legal.

                                    II

La admisión al ejercicio de la abogacía es un asunto que está revestido del más alto interés público, por lo que requiere ser tramitada dentro de los parámetros del más estricto control de calidad. Véase, In re C.R.R., P.C. de 21 de noviembre de 1997, 144 D.P.R. ____ (1997), 97 JTS 137,  pág. 287.  Nuestra facultad inherente para reglamentar la admisión y remoción de la profesión legal conlleva la enorme responsabilidad de velar porque los candidatos a ejercer la profesión estén capacitados y sean aptos para cumplir fiel y cabalmente las serias responsabilidades que abriga la abogacía.  In re C.R.R., supra; In re Antonio Córdova González, P.C. de 9 de marzo de 1994, 135 D.P.R.___ (1994), 94 JTS 23, pág. 11577.  Véanse, además: In re Belén Trujillo, 128 D.P.R. 931, 957 (1991); García O'Neill v. Cruz, 126 D.P.R. 518, 522 (1990).  Más importante aún, dentro de dicho poder inherente se encuentra el deber ineludible de "`**instituir y mantener un orden jurídico íntegro y eficaz que goce de la completa confianza y apoyo de la ciudadanía**'".  (Énfasis nuestro.)  Colegio de Abogados de P.R. v. Barney, 109 D.P.R. 845, 847 (1980).

Es lo anterior lo que nos hace responsables, no sólo de velar por la observancia de la actuación de los miembros que forman parte de la profesión togada y tomar la acción disciplinaria o medida especial de protección social apropiada, sino que, una vez tomada dicha acción o medida, nos compete además, decidir cuándo la acción disciplinaria o la medida especial ha logrado su propósito.  In re Angel Mundo Rodríguez, P.C. de 10 de septiembre de 1998, 146 D.P.R.___ (1998), 98 JTS 119. Véase, también, Colegio de Abogados de P.R. v. Barney, supra.

                                    III

**La dependencia o adicción a sustancias químicas (alcohol y drogas) es una epidemia de la cual la profesión legal no se encuentra inmune. A pesar de que hoy día no existe una solución para erradicar este mal,**

**es nuestra responsabilidad reconocer que existe el problema en nuestra clase togada y que, en virtud de nuestro poder inherente para reglamentar la profesión jurídica, venimos obligados a auscultar alternativas para aquellos miembros que padecen de este mal, manteniendo siempre en mente el deber de todo abogado de garantizar una representación adecuada al público.**

La Asociación Americana de Psiquiatras (American Psychiatric Association) (A.P.A.) reconoce la dependencia a sustancias químicas o, como la A.P.A. la llama, "substance-related disorders"[8] como una enfermedad primaria la cual presenta una sintomatología específica que permite hacer un diagnóstico preciso para un tratamiento adecuado. Sobre este particular se ha dicho lo siguiente:

> Chemical dependency [alcohol and drugs] is a complex disease entity that includes biogenetic and psychosocial phenomena. Applying the 'stress diathesis' concept to addiction as a disease, chemical dependency typically involves biogenetic risk factors that make an individual particularly vulnerable to chemicals. Environmental or stress factors, such as early developmental issues, concomitant psychiatric illness, peer pressure, work and family discord, etc., will trigger in the vulnerable person the primary symptom of chemical dependency (the compulsive use of mood altering addictive chemicals despite adverse consequences). Anderson, C.A., Reddy B., Angres, D., Chemical Dependency: Recognition, Intervention, Treatment and Recovery, The Bar Examiner, August 1994, pág. 21.

Tan reciente como en noviembre de 1997, el National Institutes of Health (NIH),[9] convocó a un "Consensus Panel on Effective Medical Treatment of Heroin Addiction."[10] **Dicho panel concluyó que la adicción a sustancias químicas u opiáceas es una enfermedad del cerebro y un desorden médico, que se puede tratar con resultados efectivos.** El

---

[8] Véase, Diagnostic and Statistical Manual of Mental Disorders, Fourth Ed., 1994 (the DSM-IV).

[9] Es menester puntualizar que el National Institutes of Health (NIH) es considerado una de las autoridades máximas en la medicina reconocida a nivel nacional e internacional.

[10] El "Consensus Panel" estuvo compuesto por doce (12) miembros especialistas en áreas como psiquiatría, psicología y drogadicción. La reunión tuvo lugar del 17 al 19 de noviembre de 1997 en Bethesda, Maryland, en las facilidades del (NIH).

Panel recomendó, entre otras cosas, proveer mayor acceso a programas de tratamiento de metadona[11] para pacientes adictos a dichas sustancias, así como la eliminación de las regulaciones federales y estatales que actualmente dificultan dicho acceso. Además, puntualizó la importancia de proveer terapias psicológicas y consejerías y otros servicios de apoyo para que el tratamiento con metadona resulte exitoso. Véase, National Institutes of Health, NIH Consensus Panel Recommends Expanding Access to and Improving Methadone Treatment Programs for Heroin Addiction, (Nov. 17-19, 1997), (visitado el 22 de octubre de 1998), http:// odp.od.nih.gov/ consensus/ cons/ 108/ 108/__statement.htm/. Véase, además, el informe de prensa sometido por el "Consensus Panel" el 19 de noviembre de 1997. http:// odp.od.nih.gov/consensus/news/releases/108/__release.htm/.

De acuerdo al National Institute on Drug Abuse, National Institutes of Health, existe una serie de tratamientos para personas adictas que incluyen medicamentos y terapias, los cuales, en muchas ocasiones, logran que el paciente deje de utilizar la droga y se reintegre a la vida productiva. National Institutes of Health, NIH Consensus Panel Recommends Expanding Access to and Improving Methadone Treatment Programs for Heroin Addiction (Nov. 17-19, 1997), supra.

De lo anterior se puede colegir que la dependencia a sustancias químicas es una enfermedad real, o sea, similar hasta cierto punto, a una enfermedad del corazón o cáncer, la cual requiere y responde a tratamiento adecuado.

Por lo expuesto anteriormente no queda lugar a dudas que la dependencia a sustancias químicas es una enfermedad que puede ser efectivamente tratada a tal punto que el individuo puede llevar una

---

[11] La metadona es definida como un analgésico o narcótico sintético prescrito para aliviar el dolor intenso, para el tratamiento de la desintoxicación y para los programas de tratamientos de pacientes adictos a opiáceos. Diccionario Mosby de Medicina y Ciencias de la Salud, Madrid, Mosby-Doyma Libros, 1995, pág. 707.

vida normal y productiva en la sociedad. Nos resta entonces evaluar si procede la reinstalación de Gómez Morales a la profesión jurídica.

IV

En primer lugar, los tres (3) peritos psiquiatras han coincidido claramente en que la condición de dependencia a sustancias controladas de Gómez Morales no le impide el desempeño de sus funciones como abogado. Más aún, todos han señalado que, con el tratamiento adecuado, éste puede llevar una vida completamente normal y funcional.

En segundo lugar, Gómez Morales ha demostrado un alto interés en rehabilitarse y, ciertamente, sus esfuerzos parecen haber sido exitosos. Nótese que, de los documentos que obran en autos y a los cuales hemos hecho referencia en esta opinión, surge que Gómez Morales se ha mantenido sustancialmente limpio en cuanto al uso de drogas y que con el tratamiento adecuado, ha podido llevar a cabo una vida normal y productiva.

Cabe además destacar que, aunque Gómez Morales ha estado separado de la profesión legal desde el 1989, éste ha demostrado que no se ha desligado de la misma. Como bien señaláramos, actualmente se desempeña como técnico legal de un bufete, lo que ciertamente lo mantiene en contacto directo con nuestro estado actual de derecho.

Finalmente hay que tomar en cuenta el hecho de que a Gómez Morales nunca se le ha presentado querella alguna por parte de algún cliente que le impute conducta profesional impropia.

En resumen, estamos frente a una persona cuyo comportamiento revela buena conducta y reputación, capaz de controlar su adicción mediante tratamiento médico, consejería psiquiátrica y abstinencia.

Ahora bien, no empece a lo anterior y, amparados en nuestra facultad inherente para reglamentar la profesión, consideramos prudente mantener la supervisión directa de Gómez Morales en aras de verificar que éste puede mantener su nivel de progreso y con el fin de proteger los intereses de sus potenciales clientes. Así pues, permitiremos que

Gómez Morales ejerza la profesión bajo condiciones probatorias monitoreadas, hasta que este Tribunal disponga lo contrario.

Respecto a la reinstalación condicionada resulta propio señalar que al examinar otras jurisdicciones, hemos encontrado que, a manera de excepción, éstas han adoptado como práctica la reinstalación condicional en aquellos casos en los cuales entienden que la reinstalación no provocará riesgos de daños a los clientes, a los tribunales ni a la profesión.

Por otra parte, en In re C.R.R., supra, atendiendo una situación muy similar a la que hoy nos ocupa, establecimos que una admisión condicional concede la licencia para practicar la profesión, sujeto al cumplimiento de ciertas condiciones, que pueden ser temporales o permanentes, según sea el caso. La violación de las condiciones establecidas contiene la nefasta consecuencia de la suspensión o revocación de la licencia. Añade dicho caso que si culmina el período probatorio sin haberse incumplido las condiciones, se emite entonces una licencia permanente.

Así pues, se reinstalará a Gómez Morales a la profesión legal, sujeto a las condiciones siguientes:

1. que cumpla a cabalidad con los Cánones de nuestro Código de Etica Profesional;

2. que cada tres (3) meses se someta a pruebas periódicas de detección de sustancias controladas; dichas pruebas deberán hacerse en un laboratorio o instituto reconocido, el cual tendrá la obligación de remitir directamente a la Comisión de Reputación del Tribunal Supremo una copia de los resultados obtenidos; además, dicho laboratorio o instituto deberá certificar que esos son los resultados de Gómez Morales y que las pruebas se realizaron siguiendo los parámetros y procedimientos aceptados y reconocidos en ese momento en la profesión médica; de ser necesario y conveniente, la Comisión de Reputación del Tribunal Supremo podrá designar el laboratorio o instituto que realizará las pruebas pertinentes;

3. que se haga miembro activo de un programa de rehabilitación para la adicción; y

4. que se someta a consejería psiquiátrica o psicológica por un profesional licenciado, a su propio costo y presente a la Comisión de Reputación del Tribunal Supremo evidencia de ello.

Una vez reinstalado, Gómez Morales deberá comparecer a la Comisión de los Asuntos del Abogado del Colegio de Abogados de Puerto Rico para solicitar orientación sobre los recursos disponibles en la comunidad para tratar su enfermedad.[12]

Cada seis (6) meses Gómez Morales deberá informar a la Comisión de Reputación del Tribunal Supremo, de la manera en que ésta lo estime apropiado y conveniente, el tratamiento recibido en ese período, los programas de rehabilitación a que pertenezca, la consejería psiquiátrica obtenida, los nombres de los profesionales visitados, el lugar donde se desempeña como abogado, el volumen de trabajo legal y las tareas realizadas, así como cualquier otra gestión o asunto que sea pertinente o que la Comisión de Reputación le exija informar.

El esquema previsto para el desempeño y funcionamiento de la Comisión de Reputación contiene los mecanismos necesarios, tales como entrevistas personales, vistas y la juramentación y recepción de prueba, para brindar la oportunidad al reinstalado de poner a la Comisión en posición de tomar una decisión informada. Véanse, Reglas 2(a)(2), 2(c), y (b), del Reglamento de la Comisión de Reputación.

Lo hoy resuelto descansa en los pilares básicos de justicia y equidad. Alcanza el mejor equilibrio entre todos los intereses envueltos. Asimismo, confiere garantías de que se reinstale al ejercicio de la abogacía a una persona que ha demostrado haberse rehabilitado de sus problemas de adicción, salvaguardando los derechos

---

[12] En la actualidad el Colegio de Abogados de Puerto Rico cuenta con la Comisión de los Asuntos del Abogado, encargada de brindar ayuda a los abogados que acudan a solicitarla, a través de psicólogos, psiquiatras y otros profesionales, que precisamente tratan con problemas de adicción a sustancias controladas.

de sus futuros clientes y el respeto y decoro debido a los tribunales de justicia y a la profesión en general.

Se dictará la sentencia correspondiente.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re

Víctor M. Gómez Morales
                              CP-89-94

SENTENCIA

San Juan, Puerto Rico, a 22 de octubre de 1998

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, se reinstala al Sr. Víctor M. Gómez Morales a la profesión legal, sujeto a las condiciones siguientes:

1. que cumpla a cabalidad con los Cánones de nuestro Código de Etica Profesional;

2. que cada tres (3) meses se someta a pruebas periódicas de detección de sustancias controladas; dichas pruebas deberán hacerse en un laboratorio o instituto reconocido, el cual tendrá la obligación de remitir directamente a la Comisión de Reputación del Tribunal Supremo una copia de los resultados obtenidos; además, dicho laboratorio o instituto deberá certificar que esos son los resultados de Gómez Morales y que las pruebas se realizaron siguiendo los parámetros y procedimientos aceptados y reconocidos en ese momento en la profesión médica; de ser necesario y conveniente, la Comisión de Reputación del Tribunal Supremo podrá

designar el laboratorio o instituto que realizará las pruebas pertinentes;

3. que se haga miembro activo de un programa de rehabilitación para la adicción; y

4. que se someta a consejería psiquiátrica o psicológica por un profesional licenciado, a su propio costo y presente a la Comisión de Reputación del Tribunal Supremo evidencia de ello.

Una vez reinstalado, Gómez Morales deberá comparecer a la Comisión de los Asuntos del Abogado del Colegio de Abogados de Puerto Rico para solicitar orientación sobre los recursos disponibles en la comunidad para tratar su enfermedad.

Cada seis (6) meses Gómez Morales deberá informar a la Comisión de Reputación del Tribunal Supremo, de la manera en que ésta lo estime apropiado y conveniente, el tratamiento recibido en ese período, los programas de rehabilitación a que pertenezca, la consejería psiquiátrica obtenida, los nombres de los profesionales visitados, el lugar donde se desempeña como abogado, el volumen de trabajo legal y las tareas realizadas, así como cualquier otra gestión o asunto que sea pertinente o que la Comisión de Reputación le exija informar.

El esquema previsto para el desempeño y funcionamiento de la Comisión de Reputación contiene los mecanismos necesarios, tales como entrevistas personales, vistas y la juramentación y recepción de prueba, para brindar la oportunidad al reinstalado de poner a la Comisión en posición de tomar una decisión informada. Véanse, Reglas 2(a)(2), 2(c), y (b), del Reglamento de la Comisión de Reputación.

Lo hoy resuelto descansa en los pilares básicos de justicia y equidad. Alcanza el mejor equilibrio entre todos los intereses envueltos. Asimismo, confiere garantías de que se reinstale al ejercicio de la abogacía a una persona que ha demostrado haberse rehabilitado de sus problemas de adicción, salvaguardando los derechos de sus futuros clientes y el respeto y decoro debido a los tribunales de justicia y a la profesión en general.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López concurre con el resultado sin opinión escrita.


Isabel Llompart Zeno
Secretaria del Tribunal Supremo