EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>Carlos Manzano Velázquez | 2009 TSPR 180<br><br>177 DPR _____ |

Número del Caso: TS-3296

Fecha: 2 de diciembre de 2009

Oficina del Procurador General:

       Lcda. Noemí Rivera de León
       Procuradora General Auxiliar

Abogado de la Parte Peticionaria:

       Lcdo. Juan J. Turull Echevarría

Materia: Reinstalación al Ejercicio de la Abogacía

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Carlos Manzano Velázquez                    TS-3296

PER CURIAM

En San Juan, Puerto Rico, a 2 de diciembre de 2009.

El peticionario, Carlos Manzano Velázquez, fue admitido al ejercicio de la abogacía en junio de 1969 y al ejercicio de la notaría en agosto del mismo año. El 7 de noviembre de 1997, este Tribunal determinó su separación definitiva de la profesión.

En el año 2007 el peticionario solicitó su reinstalación a la práctica de la abogacía por entender que la condición que lo mantuvo incapacitado para descargar sus responsabilidades como abogado ha sido superada. Alegó que desde el año 2001 ha estado recibiendo tratamiento bajo el

Programa de Metadona de la Administración de Servicios de Salud Mental y Contra la Adicción (ASSMCA) y que se encuentra totalmente rehabilitado.

El 2 de mayo de 2008, emitimos una Resolución mediante la cual determinamos que se tramitara esta petición a tenor con el procedimiento dispuesto en la Regla 15(H) del Reglamento del Tribunal Supremo y designamos a la Lcda. Crisanta González Seda para que en calidad de Comisionada Especial recibiera la prueba sobre la capacidad mental o emocional del peticionario, de conformidad con el procedimiento establecido en la Regla 15(H) del Reglamento del Tribunal Supremo de Puerto Rico, 4 L.P.R.A. Ap. XXI R. 15(H), y para que rindiera un informe con determinaciones de hechos y las recomendaciones que estimara pertinentes.

El 7 de mayo de 2008, se emitió una Orden concediéndole a las partes un término de diez días para que designaran sus peritos psiquiatras, apercibiéndoles a su vez que de no hacerlo en dicho término se designarían por la Comisionada conforme a la Regla 15. Asimismo, se requirió la notificación de las cualificaciones de cada perito psiquiatra. Además, se solicitó a las partes que ofrecieran tres fechas para una vista con antelación a la vista final y se señaló una vista para el 6 de agosto de 2007, con el propósito de encauzar el procedimiento y simplificar las cuestiones relativas a éste, así como para establecer un calendario de trabajo.

El 19 de mayo de 2008, la Oficina del Procurador General de Puerto Rico notificó que su perito era el Dr. Raúl López y proveyó la dirección y teléfono de éste. El 21 de mayo de 2008 el peticionario radicó moción para indicar que no iba a contratar los servicios de un médico psiquiatra y que lo designara la Comisionada. Se ordenó al peticionario que contratara un perito y el 17 de junio de 2008, éste notificó haber contratado al Dr. Guillermo J. Hoyos y sometió la dirección y *curriculum vitae* de este. Por acuerdo de las partes se señaló una vista para el 26 de junio de 2008, a la que compareció el peticionario, asistido de su abogado Lcdo. Juan J. Turull Echevarría. Por la Oficina del Procurador General compareció la Lcda. Noemí Rivera de León, Procuradora General Auxiliar. A esa fecha no había sido posible contratar el perito de la Comisionada Especial para completar el panel.

La Lcda. Rivera solicitó que su perito pudiera revisar el expediente médico del peticionario y éste expresó no tener objeción a que el médico contratado por la Oficina del Procurador General examinara éste. Se comprometió a firmar un relevo respecto a la confidencialidad del expediente en AMSSCA, con el objetivo de que los tres peritos psiquiatras pudieran examinar los expedientes para los propósitos de este procedimiento. Solicitó que la Comisionada Especial

dictara una orden para que AMSSCA facilitara los expedientes a los médicos.

El 22 de septiembre de 2008, las partes sometieron una moción suscrita por la Procuradora General Auxiliar, Lcda. Noemí Rivera de León y por el abogado del peticionario Juan J. Turull Echevarría, en la que informaron que evaluaron los hallazgos y conclusiones de los tres informes de los peritos. Solicitaron que se les permitiera someter el caso para la recomendación final de la comisionada, sin trámites ulteriores y sin la necesidad de que se celebrara vista. Se informó además, que el peticionario estaba dispuesto a cumplir con las recomendaciones hechas por los peritos, Dra. Myrna Zegarra y Dr. Raúl López.

El 23 de septiembre de 2008, la Comisionada González Seda emitió una resolución, en la que indicó que de las mociones remitidas por las partes hasta ese momento se desprendía que éstas habían cumplido a cabalidad con el itinerario de trabajo. Así las cosas, la Comisionada accedió a la solicitud para que se dejara sin efecto el señalamiento de vista final y dio el caso por sometido en aras de emitir el informe final que le fue encomendada.

No obstante, el 20 de octubre de 2008, un examen del expediente del peticionario en AMSSCA reveló que había arrojado un positivo a cocaína en una prueba realizada después de iniciado el procedimiento para considerar su solicitud de reinstalación. Asimismo, el Dr. Guillermo J.

Hoyos Precssas, el propio perito del peticionario, expresó su preocupación en torno a dicho positivo y mostró interés en recibir una certificación escrita, sobre la confiabilidad o no de dicho resultado. A través del peticionario el Dr. Hoyos recibió información de que ello no era posible, pero que la Directora del Centro estaba en disposición de comparecer a testificar si la citaban.

A tales efectos, ese mismo día la Comisionada emitió una resolución y orden, mediante la cual dejó sin efecto la determinación anterior y señaló una vista con el propósito de escuchar el testimonio de la doctora Aileen Ginorio Hernández, Directora Médica del Centro de Metadona AMSSCA, en San Juan, sobre el resultado de la prueba que arrojó positivo a cocaína.

Luego de varias gestiones de los alguaciles del tribunal para localizar a dicha funcionaria, se celebró la vista con el beneficio de su comparecencia y de las partes. El peticionario compareció personalmente y representado por el Lcdo. Juan Turull Echevarría y la Oficina del Procurador General compareció representada por la Lcda. Minnie H. Rodríguez, ya que la abogada que estaba asignada al caso fue nombrada a otra posición. El doctor Hoyos estuvo presente ese día.

La Dra. Ginorio Hernández opinó en su testimonio, que tomando en cuenta el cuadro clínico del peticionario anterior y posterior a la prueba en cuestión, el

resultado pudo deberse a un error. A preguntas de la Procuradora General Auxiliar, la licenciada Rodríguez, la Directora del Centro indicó que el tiempo máximo durante el cual subsiste la probabilidad de que una persona que ingiera cocaína pueda arrojar un positivo es de dos semanas. Por tal razón, la Dra. Ginorio aclaró que tras el resultado positivo, el peticionario fue sometido a otras pruebas de seguimiento semanales que arrojaron negativos consistentemente.

Debido a la importancia de este punto en la resolución del procedimiento, la comisionada ordenó la transcripción del testimonio de la doctora, para que la examinaran los peritos y señaló una vista para que los galenos se expresaran sobre el positivo que surgía del expediente de AMSSCA. Con el beneficio de la comparecencia de las partes y la presencia del panel de peritos psiquiatras se leyó la transcripción del testimonio de la doctora Ginorio y cada uno de los peritos testificó haciendo referencia al informe que habían emitido originalmente. El peticionario también testificó en la vista.

Tras las celebraciones de las vistas pertinentes para la realización del informe la comisionada hizo las siguientes determinaciones de hechos:

El peticionario comenzó a utilizar marihuana a la edad de dieciséis años; hábito que posteriormente produjo una adicción a esta sustancia. Luego empezó a consumir

cocaína y heroína de forma nasal. Eventualmente, recurrió a suministrarse la heroína de forma intravenosa, desarrollando dependencia a ambas sustancias.

A pesar del uso de sustancias controladas desde temprana edad, estudió sin mayores complicaciones hasta graduarse de abogado en el año 1968. Además, trabajaba como líder recreativo, mientras estudiaba. Comenzó a confrontar problemas con el desempeño de la profesión que se evidenciaron desde el año 1975, en que le impusimos sanciones económicas por la remisión tardía de poderes y situaciones relativas al cobro de honorarios. No cumplía con el pago de la fianza notarial ni con las órdenes para corregir las deficiencias notariales.

En el año 1992 fue suspendido un mes de la abogacía y tres meses de la notaría, por deficiencias notariales. Luego fue reinstalado a la abogacía, pero no a la notaría. El 22 de noviembre de 1993 decretamos la suspensión indefinida del señor Manzano Velázquez de la abogacía y de la notaría, aunque aún no se le había reinstalado al ejercicio de la notaría desde febrero de 1992. El 18 de marzo de 1994 ratificamos la suspensión indefinida del peticionario de la abogacía y la notaría. El 28 de abril de 1995 se le reinstaló en el ejercicio de la abogacía, pero no a la notaría. En el 1998 no se recomendó su reinstalación como notario, según surge del informe de la Directora de la Oficina de Inspección de

Notarías, de 3 de diciembre de 1998, que forma parte del expediente del caso.

El 4 de febrero de 1997, el peticionario Manzano Velázquez hizo alegación de culpabilidad por siete cargos de desacato criminal debido a reiteradas incomparecencias ante el Tribunal de Primera Instancia, Sala Superior de Carolina, a pesar de ser debidamente citado. El tribunal le impuso una sentencia de treinta días de cárcel por cada cargo, a ser cumplidos concurrentemente, y no le concedió los beneficios de una sentencia suspendida. Se elevó la minuta y el informe pre-sentencia al este Tribunal para la consideración de los aspectos éticos correspondientes. El peticionario no compareció a contestar la querella y emitimos la decisión de suspenderle indefinidamente del ejercicio de la profesión, el 7 de noviembre de 1997.

En el 1997, jueces, vecinos y otras personas en la comunidad, le describieron como una persona inteligente, respetuosa y tranquila. Se mostraron preocupados y apenados por las personas que frecuentaba y por su problema de adicción a drogas. Los jueces indicaron que cuando estaba en condiciones normales era un excelente abogado, que se preparaba y conocía sus casos, pero se ausentaba con frecuencia, lo que provocaba la continua imposición de desacatos. Éstos eventualmente se archivaban porque el peticionario brindaba evidencia de enfermedad y los jueces la aceptaban, aunque era de

conocimiento general que tenía problemas con el uso de sustancias controladas.

Para el 19 de septiembre de 1997, la Oficina del Procurador General emitió un informe relativo a la querella presentada por la Sra. Carmen Ocasio Hernández en el caso AB1996-118. La consideración de esta querella se pospuso, ya que el peticionario fue suspendido del ejercicio de la profesión el 7 de noviembre de 1997. El 25 de febrero de 2005 se pospuso la consideración de la solicitud de readmisión hasta que se concluyera la investigación de la queja AB1996-118. En el mes de octubre de 2006, la Oficina del Procurador General solicitó el archivo de la querella y en el 2007, el peticionario solicitó nuevamente la reinstalación.

El 8 de septiembre de 1999, la Oficina de Alguaciles del Tribunal Supremo rindió un informe en el que se indica que se hicieron gestiones para comunicarse con el peticionario y no pudieron localizarlo. Lo buscaron en los Hogares Crea y en los otros centros internos para adictos del área y no lo consiguieron. Tampoco pudieron contactarlo en el área que frecuentaba, el Residencial Lagos de Blasina de Carolina.

En respuesta, el 15 de noviembre de 1999, el peticionario radicó una moción en la que indicó que la Oficina del Procurador General recomendó que permaneciera interno en un programa de tratamiento para la adicción a drogas por espacio de seis meses. Informó que desde el 13

de julio de 1999 se encontraba en el Hogar Crea de San José, en San Juan.

El 24 de enero de 2000, el peticionario presentó otra moción indicando que se encontraba internado y seguía en el Hogar Crea, pero en Bayamón. Solicitó que se designara un comisionado especial para recibir la prueba sobre su salud física y capacidad mental para ejercer la abogacía y que se designara un psiquiatra para evaluarlo y se le notificara la fecha de evaluación, todo esto bajo la Regla 15 del Reglamento del Tribunal Supremo, supra. Dicha petición fue denegada.

En el transcurso del año 2001 hasta el año 2006 el peticionario asistió al Centro de Metadona de San Juan. Durante dicho período, el señor Manzano Velázquez arrojó varios resultados positivos al uso de sustancias controladas. No obstante, desde el 2006 hasta el 2008 los resultados de las pruebas fueron negativos. Sin embargo en el 2008 se recibió un resultado positivo a cocaína, que ha sido negado por el peticionario.

Las evaluaciones y pruebas a que fue sometido en este proceso por los tres peritos, demostraron que el peticionario es cooperador, no es hostil y se mostró tranquilo en las entrevistas. Los tres peritos concuerdan que el peticionario es de pensamiento coherente, relevante y lógico. Su memoria remota e inmediata es adecuada en todas las áreas. Su proceso de pensamiento es bien organizado y coordinado, sin que pudiera detectarse

obsesiones, compulsiones, ideas suicidas ni homicidas. Tampoco se detectó algún proceso de tipo alucinatorio, delirios o estado sicótico. No se identificó ningún estresor, excepto la ansiedad de rehabilitarse.

El Dr. Raúl López, perito de la Oficina del Procurador General, entrevistó al peticionario y lo sometió a diversas pruebas. Procedió a revisar los expedientes médicos pertinentes y rindió un informe. Luego, tuvo la oportunidad de examinar el testimonio de la Dra. Aileen Ginorio Hernández. Tanto en el informe como durante su testimonio en la vista, opinó que el peticionario se encuentra en un periodo de remisión óptimo que denota su compromiso con permanecer libre del uso de sustancias controladas. De igual manera, el Dr. López indicó que si bien es cierto que la adicción es una enfermedad crónica y de carácter recurrente, los pacientes sometidos a tratamientos psicoterapéuticos y o psiquiátricos según las circunstancias de cada caso pueden llevar vidas relativamente normales. Así pues, el Dr. López opinó que el señor Manzano Velázquez puede retomar sus deberes y responsabilidades como abogado a un nivel aceptable, condicionado a que continúe recibiendo el tratamiento que entienda necesario su psiquiatra.

Por otro lado, el Dr. Guillermo José Hoyos, en representación del peticionario, examinó los expedientes médicos pertinentes, se entrevistó con la doctora Ginorio el día en que esta testificó, discutió con los otros

psiquiatras la transcripción del testimonio emitido por esta y en su declaración en la vista indicó estar de acuerdo con las declaraciones del doctor López. Expresó que a lo largo de las entrevistas con el peticionario, pudo observar que estaba en completo dominio de su estado mental. Asimismo, constató que la doctora Ginorio le aclaró una serie de aspectos sobre la prueba tales como su manejo y otros factores que pueden incidir en que el resultado arrojare un positivo a cocaína. Finalmente, el Dr. Hoyos reiteró la capacidad del peticionario para reintegrarse a la profesión con la ayuda de terapias y personal de apoyo.

Por otra parte, la Dra. Myrna Zegarra Paz, perito nombrada por la Comisionada Especial, entrevistó al peticionario en tres ocasiones. Examinó los expedientes médicos pertinentes, la transcripción del testimonio de la doctora Ginorio y en su declaración en la vista indicó estar de acuerdo con las declaraciones del doctor López y el doctor Hoyos. Indicó que para el 2009 se esperaba que el peticionario fuera dado de alta. Recomendó que el Señor Manzano Velázquez continuara recibiendo tratamiento sicológico o psiquiátrico, que formara parte de grupos de apoyo y que fuera sometido a pruebas de orina periódicas, y que los resultados fueran enviados a este Tribunal. Expresó que el tiempo bajo supervisión para que se mantenga libre del uso de sustancias controladas debe ser un criterio del profesional que este trabajando con el

peticionario. Opinó que el hecho de que él supere la dependencia no significa que no este susceptible a una recaída. El apoyo externo, según indicó la Dra. Zegarra es vital para evitar la reincidencia. Ese apoyo es un seguimiento de la parte emocional y el uso de sustancias controladas.

Por último, el peticionario señaló que está en actitud de aceptar las condiciones que se le exijan para su reinstalación sin reparo alguno.

### III.

La admisión al ejercicio de la abogacía es un asunto revestido del más alto interés público, por lo que requiere ser tramitada dentro de los parámetros del más estricto control de calidad. In re Gómez Morales, 146 DPR 837, 846 (1998). Nuestra facultad para reglamentar la admisión y remoción de la profesión legal conlleva la enorme responsabilidad de velar porque los candidatos a ejercer la profesión estén capacitados y sean aptos para cumplir fiel y cabalmente las serias responsabilidades que abriga la abogacía. In re Gómez Morales, supra, pág. 847.

Más aún, dentro de dicho poder se encuentra el deber ineludible de instituir y mantener un orden jurídico íntegro y eficaz que goce de la completa confianza y apoyo de la ciudadanía. Colegio de Abogados de Puerto Rico v. Barney, 109 D.P.R. 845, 847 (1980). Es lo anterior lo que nos obliga a velar no sólo por la

observancia de la actuación de los miembros que forman parte de la profesión togada y tomar la acción disciplinaria o medida especial de protección social correspondiente, sino que una vez tomada dicha acción o medida, nos compete además, decidir cuándo la acción disciplinaria o medida especial ha logrado su propósito, In re Gómez Morales, supra, pág. 847

En In re Gómez Morales, supra, en que se planteaba una situación parecida a la que nos ocupa, reconocimos que la dependencia a sustancias químicas es una enfermedad que puede tratarse con resultados efectivos. En el caso de marras, el peticionario padece de esta enfermedad desde los dieciséis años. No obstante ello, estudió hasta convertirse en abogado. Sin embargo, la negativa a recibir tratamiento adecuado por profesionales o instituciones apropiadas durante muchos años, propició que su desempeño como abogado fallara en cumplir con las exigencias de la profesión. No fue sino hasta hace varios años que el peticionario aparenta haber retomado su vida, mediante el tratamiento con metadona y bajo el cuidado de un equipo de profesionales de la salud que le han brindado su apoyo.

Los tres peritos designados en este procedimiento coinciden que el Lcdo. Manzano Velázquez podría desempeñarse adecuadamente como abogado con la asistencia médica necesaria. Según las observaciones de los peritos, el peticionario ha mostrado su interés en rehabilitarse

al lograr emprender una "vida normal y productiva". Asimismo, el peticionario ha continuado desenvolviéndose en la profesión fungiendo como paralegal en un bufete, exponiéndose así a los desarrollos fraguados en el campo del derecho recientemente.

Ahora bien, la reinstalación condicionada se adopta en aquellos casos en los cuales se entienda que ésta no provocará riesgos de daños a los clientes, a los tribunales ni a la profesión. Por lo tanto, una admisión condicional concede la licencia para practicar la profesión, sujeto al cumplimiento de ciertas condiciones, que pueden ser temporales o permanentes, según sea el caso. De ese modo, la violación de las condiciones establecidas conlleva la funesta consecuencia de la suspensión o revocación de la licencia. Sólo el cumplimiento del periodo probatorio sin incumplir alguna de las condiciones permitirá la emisión de una licencia permanente. Véase, In re Gómez Morales, supra, pág. 851.

Por lo anterior, se reinstalará como abogado al señor Manzano Velázquez sujeto a las siguientes condiciones:

1. Que el señor Manzano Velázquez cumpla a cabalidad con los Cánones de nuestro Código de Ética Profesional.

2. Que cada tres meses (3) se someta a pruebas de detección de sustancias controladas; dichas pruebas deberán realizarse en un laboratorio o instituto reconocido, el cual tendrá la obligación de remitir

directamente a la Comisión de Reputación para el Ejercicio de la Abogacía una copia de los resultados obtenidos; además dicho laboratorio o instituto deberá certificar que esos son los resultados del señor Manzano Velázquez y que las pruebas se realizaron siguiendo los parámetros y procedimientos aceptados y reconocidos en ese momento en la profesión médica; de ser necesario y conveniente, la Comisión de Reputación podrá designar el laboratorio o instituto que realizará las pruebas pertinentes. Si el resultado de alguna de estas pruebas periódicas arrojara positivo al uso de sustancias controladas, la Comisión de Reputación deberá informarlo al Tribunal con premura.

3. Que el peticionario se haga miembro activo de un programa de rehabilitación para adicción una vez se le de de alta en AMSSCA; y

4. Que se someta a consejería psiquiátrica o psicológica por un profesional licenciado, a su propio costo y presente a la Comisión de Reputación evidencia de ello.

5. Cada seis (6) meses el peticionario deberá informar a la Comisión de Reputación, de la manera en que ésta lo estime apropiado y conveniente, el tratamiento recibido en ese período, los programas de rehabilitación a que pertenezca, la consejería psiquiátrica obtenida, los nombres de los

profesionales visitados, el lugar donde se desempeña como abogado, el volumen de trabajo legal y las tareas realizadas, así como cualquiera otra gestión o asunto que sea pertinente o que la Comisión de Reputación exija informar.

6. El peticionario deberá cumplir con estas condiciones por un término de dieciocho (18) meses. Transcurrido ese plazo, la Comisión de Reputación rendirá un informe a este Tribunal para determinar si se puede prescindir de las condiciones o si es necesario extenderlas o tomar otras medidas. Además, la Comisión de Reputación podrá rendir cualquier informe que entienda necesario y esté relacionado con el proceso aquí ordenado, antes de vencer el mencionado plazo de dieciocho (18) meses.

El esquema provisto para el desempeño y funcionamiento de la Comisión de Reputación contiene los mecanismos necesarios, tales como entrevistas personales, vistas y la juramentación y recepción de prueba, para brindar la oportunidad al reinstalado de poner a la Comisión en posición de tomar una decisión informada. Véase, In re Gómez Morales, supra.

Lo resuelto en este caso es cónsono con los principios medulares de la justicia y la equidad que consagra nuestro ordenamiento. La reinstalación del señor Manzano Velázquez refleja nuestra firme convicción de alentar la rehabilitación de los adictos. Empero, es en

un balance de intereses, donde prima nuestra obligación de mantener un orden jurídico íntegro y eficaz, que goce de la completa confianza y apoyo de la ciudadanía, que le concedemos la reinstalación condicionada al Lcdo. Manzano. Nuestra obligación de salvaguardar el respeto y decoro debido a los tribunales de justicia, la profesión y la ciudadanía en general es insoslayable. Por lo tanto, el cumplimiento fiel, estricto y puntilloso con los requerimientos descritos anteriormente es condición *sine qua non* para que el señor Manzano Velázquez continúe poseyendo el privilegio de ejercer esta noble profesión.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Carlos Manzano Velázquez                TS-3296

SENTENCIA

En San Juan, Puerto Rico, a 2 de diciembre de 2009.

Por los fundamentos anteriormente expuestos, se reinstala al Sr. Carlos Manzano Velázquez a la profesión legal, sujeto a las siguientes condiciones:

7. Que el señor Manzano Velázquez cumpla a cabalidad con los Cánones de nuestro Código de Ética Profesional.

8. Que cada tres meses (3) se someta a pruebas de detección de sustancias controladas; dichas pruebas deberán realizarse en un laboratorio o instituto reconocido, el cual tendrá la obligación de remitir directamente a la Comisión de Reputación para el Ejercicio de la Abogacía una copia de los resultados obtenidos; además dicho laboratorio o instituto deberá certificar que esos son los resultados del señor Manzano Velázquez y que las pruebas se realizaron siguiendo los parámetros y procedimientos aceptados y reconocidos en ese momento en la profesión médica; de ser necesario y conveniente, la

Comisión de Reputación podrá designar el laboratorio o instituto que realizará las pruebas pertinentes. Si el resultado de alguna de estas pruebas periódicas arrojara positivo al uso de sustancias controladas, la Comisión de Reputación deberá informarlo al Tribunal con premura.

9. Que el peticionario se haga miembro activo de un programa de rehabilitación para adicción una vez se le de de alta en AMSSCA; y

10. Que se someta a consejería psiquiátrica o psicológica por un profesional licenciado, a su propio costo y presente a la Comisión de Reputación evidencia de ello.

11. Cada seis (6) meses el peticionario deberá informar a la Comisión de Reputación, de la manera en que ésta lo estime apropiado y conveniente, el tratamiento recibido en ese período, los programas de rehabilitación a que pertenezca, la consejería psiquiátrica obtenida, los nombres de los profesionales visitados, el lugar donde se desempeña como abogado, el volumen de trabajo legal y las tareas realizadas, así como cualquiera otra gestión o asunto que sea pertinente o que la Comisión de Reputación exija informar.

12. El peticionario deberá cumplir con estas condiciones por un término de dieciocho (18) meses. Transcurrido ese plazo, la Comisión de Reputación rendirá un informe a este Tribunal para determinar si se puede prescindir de las condiciones o si es necesario extenderlas o tomar otras medidas. Además, la Comisión de Reputación podrá rendir cualquier informe que entienda necesario y esté relacionado con el proceso aquí ordenado, antes de vencer el mencionado plazo de dieciocho (18) meses.

El cumplimiento fiel, estricto y puntilloso con los requerimientos descritos anteriormente es condición *sine qua non* para que el señor Manzano Velázquez continúe poseyendo el privilegio de ejercer esta noble profesión. Por lo tanto, el incumplimiento de estas condiciones o la detección futura del uso de sustancias controladas, aunque sea incidental, dará lugar a la suspensión indefinida del peticionario de la práctica de la profesión. Con tal fin, la Comisión de Reputación nos

informará si surge cualquier incumplimiento de las condiciones impuestas o si surge evidencia del uso de sustancias controladas por el peticionario.

Lo acordó y ordena el Tribunal y lo certifica la Secretaria del Tribunal Supremo.


Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo